Jay Wesley NEILL and Robert Grady Johnson, Appellants,

v.

STATE of Oklahoma, Appellee.

Nos. F–85–526, F–85–559.

Court of Criminal Appeals of Oklahoma.

Feb. 28, 1992.

Waiver of Rehearing Granted, Mandate Issued March 10, 1992.

counts of Shooting with Intent to Kill (21 O.S.1981, § 652) and one count of Attempted Shooting with Intent to Kill (21 O.S. 1981, § 652), Case No. CRF–84–597, in the District Court of Comanche County. The jury recommended punishment of death for each count of Murder, and twenty (20) years imprisonment on each count of Shooting with Intent to Kill and Attempted Shooting with Intent to Kill. The trial court sentenced accordingly. From these judgments and sentences Appellants have perfected this appeal. Judgments and sentences are REVERSED and REMANDED FOR A NEW TRIAL.

David Autry, Asst. Appellate Public Defender, Norman, for appellant Neill.

Alan Rosenbaum, Lawton, for appellant Johnson.

Robert H. Henry, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Deputy Chief, Crim. Div., Susan Stewart Dickerson, Sandra D. Howard, Asst. Attys. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Vice–Presiding Judge:

Appellants Jay Wesley Neill and Robert Grady Johnson (also referred to as the Defendants) were tried by jury and convicted of four counts of Murder in the First Degree (21 O.S.1981, § 701.7.), three counts of Shooting with Intent to Kill (21 O.S. 1981, § 652), and one count of Attempted Shooting with Intent to Kill (21 O.S.1981, § 652), Case No. CRF–84–597, in the District Court of Comanche County. The jury recommended punishment of death for each count of Murder, and twenty (20) years imprisonment on each count of Shooting with Intent to Kill and Attempted Shooting with Intent to Kill. The trial court sentenced accordingly. From these judgments and sentences Appellants have perfected this appeal.

On December 14, 1984, at approximately 1:15 p.m., the First Bank of Chattanooga in Geronimo, Oklahoma was robbed. During the robbery three bank employees, Kay Bruno, Jerri Bowles, and Joyce Mullenix

An Appeal from the District Court of Comanche County; Jack Brock, District Judge.

Jay Wesley Neill and Robert Grady Johnson, Appellants, were tried by jury and convicted of four counts of Murder in the First Degree (21 O.S.1981, § 701.7), three

and one bank customer, Ralph Zeller, were killed. Three other customers Bellen and Reuben Robles, and Marilyn Roach were shot and severely wounded. An unsuccessful attempt to shoot the Robles' fourteen month old daughter, Marie, was also made. Appellants were arrested and charged with committing the offenses. The two defendants were tried together in a single trial in May of 1985.

The record provided to this Court on appeal shows that the prosecution assembled and presented a strong case against both defendants. However, the manner in which the defendants were forced to defend themselves in the joint trial has greatly troubled this Court. As evidenced in the Appendix to this opinion, this case has been pending for some time. The voluminous contents of the case (seven volumes of transcript) and the complexity of the legal issues raised (approximately 30 allegations of error raised by each Appellant) has necessitated a prolonged and detailed analysis. During its pendency before this Court, we have repeatedly reviewed the evidence, analyzed the law and applied the law to the particular facts before us.

Paramount in our appellate review of any case are the rights afforded to every citizen under the Federal Constitution and the Constitution of the State of Oklahoma. We would be less than truthful if we said such analysis was easy in the face of such a horrible crime as is now before us. We must remember though that if the rights afforded by either constitution are to be viable for the average law abiding citizen, those same rights must also be available for those accused of the most serious crimes against society. While we are mindful of the trauma which may be experienced by the witnesses and the families of the victims in a retrial of this case, we cannot allow the luxury of the natural emotions of sympathy to be substituted for an objective application of constitutional principles.

If we were able to affirm these convictions, we would do so. However, after much legal analysis and personal thought, we find that Appellants' forced partic-

ipation in a joint trial and the ensuing sharing of peremptory challenges denied both Appellants a fair trial by violating their rights of procedural due process under the Fifth and Fourteenth Amendments of the United States Constitution, and Art. 2, § 7 of the Constitution of the State of Oklahoma. Further, the admission of a statement made by Johnson, exculpating himself and inculpating Neill, violated Neill's right to confrontation under the Sixth Amendment to the Federal Constitution and Art. 2, § 20, of the State Constitution. Therefore, our only alternative is to reverse and remand these cases for new trials.

Having identified the errors necessitating reversal, we will limit our discussion to those issues to the exclusion of the remaining assignments of error raised on appeal. Both Appellants have alleged that the trial court erred in failing to grant their motion for severance. Appellants argue that they were prejudiced by the joint trial, as the defenses of the two defendants were mutually antagonistic.

■ The decision to grant or deny severance is left to the sound discretion of the trial court. This Court has recognized that it is in the interest of both justice and economy to jointly charge and try those who have allegedly participated in the same criminal act, and we have urged trial courts to do so whenever possible. Absent an abuse of discretion resulting in prejudice to the appellant, the decision of the trial court will not be disturbed on appeal. *Cooks v. State*, 699 P.2d 653, 658 (Okl.Cr.1985); *Menefee v. State*, 640 P.2d 1381, 1383 (Okl.Cr. 1982); *Faubion v. State*, 569 P.2d 1022, 1025 (Okl.Cr.1977).

■ We have determined that one defendant's attempt to cast blame on the other is not in itself a sufficient reason to require separate trials. *Fox v. State*, 779 P.2d 562, 567 (Okl.Cr.1989); *Master v. State*, 702 P.2d 375, 378 (Okl.Cr.1985). *See also United States v. Calabrese*, 645 F.2d 1379, 1384 (10th Cir.1981), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981). Mere conflicting defenses, standing alone, do not constitute the showing of

prejudice necessary for judicial severance. *See Vowell v. State,* 728 P.2d 854, 856 (Okl.Cr.1986).

■ However, antagonistic defenses may require that defendants be tried separately. *Murray v. State,* 528 P.2d 739 (Okl.Cr.1974). In reversing the district court's decision in *Murray* denying severance, this Court said:

> However, in the instant case the respective defenses of Grizzle and Murray were mutually antagonistic. Grizzle's testimony and confession were such that only Murray could have done the shooting, while Murray's testimony and confession were such that only Grizzle could have done it.
>
> Denial of severance in the instant case resulted in pitting defendant against co-defendant. To try both together was, in effect, to try each on the confession of the other.

528 P.2d at 740.

In *Van Woundenberg v. State,* 720 P.2d 328, 331 (Okl.Cr.1986), we stated that "defenses are antagonistic where each defendant is attempting to exculpate himself and inculpate his co-defendant".

The State argues that *Murray* is not applicable to the present case as the prosecution did not introduce confessions of either defendant which implicated the other. The record shows that the prosecution only introduced statements by Johnson as to his involvement in the crimes and that neither defendant took the witness stand nor presented any witnesses or evidence in his behalf during the first stage of trial.[1] The defendants relied solely on cross-examination of the prosecution witnesses to present their theory of defense. Utilizing this trial strategy, Johnson's attorney was able to introduce the entirety of Johnson's statement which exculpated Johnson and inculpated Neill. The trial judge later verbally instructed the jury to disregard this statement.

■ Our research has failed to reveal any cases from this Court or any other jurisdictions in which co-defendants argued they were entitled to a severance because of mutually antagonistic defenses, yet presented no witnesses or evidence to support those defenses in their case in chief. Therefore, in analyzing this case of first impression, we have relied upon the general development of case law concerning antagonistic defenses and our statutory provisions for joint trials.

Examining the record of the present case, in its entirety, it is clear that the trial became more of a contest between the two defendants, through the cross-examination of the prosecution witnesses, than between the State and an individual defendant. The two defense strategies inexorably clashed as the sole defense of each defendant was the guilt of the other. In order for the trier of fact to believe the defense of one defendant, it must have necessarily disbelieved the defense put forth by the co-defendant. The specific accusations made by each defense attorney in opening statements, closing arguments and cross-examination of the State's witnesses created the antagonistic defenses. *See United States v. Romanello,* 726 F.2d 173, 178 (5th Cir. 1984).

We recognize and abide by the well established rule that opening and closing statements are not evidence for the jury to consider in determining guilt or innocence. *Ragland v. State,* 404 P.2d 84, 85 (Okl.Cr. 1965). However, it is impossible in the present case to overlook the defendants' hostility toward each other, despite the absence of calling defense witnesses to testify during the course of trial. Each defendant's theory of defense was that the co-defendant was *solely* responsible for the commission of the offenses. Where the

---

1. Neill did present one witness during his first stage case in chief. This witness, Bob Pierce, testified that he was near the door used by prosecution witness Debbie Hernandez to leave the courtroom after her testimony. Opening the door for her, he saw another prosecution witness Mark Salman standing right outside the door. Mr. Pierce testified that he overheard Ms. Hernandez tell Mr. Salman "Don't tell them nothing." (Vol. V., Tr. 2482–2483). As this testimony does not address the merits of the case, we have excluded it from consideration and analyze the issue as if no witnesses had been presented by Neill.

defenses are irreconcilable so that to believe one is to disbelieve the other, the defenses are mutually antagonistic. Therefore, the case law developed in *Murray* and its progeny apply.

In the present case the defendants' theory of defense did not become evident until delivery of opening statements. No hint was given in pre-trial proceedings that each defendant would blame the other while exonerating himself. A pre-trial Motion for Severance filed by Neill stated in pertinent part:

2. Evidence in this cause may be introduced by the government which may be inadmissible against the defendant but which may be admissible against his co-defendant, all to the prejudice of this defendant.

3. Evidence may be introduced by his co-defendant which would be inadmissible against this defendant in a separate trial to the prejudice of this defendant.

(O.R. File 3, pg. 458)

At the hearing on this motion, it was indicated that the evidence to which Neill referred was a statement made by Johnson exculpating himself and inculpating Neill. As discussed further below, the State agreed not to use the statement naming Neill. With no other grounds given for severance, Neill's motion, and a similar motion filed by Johnson, was properly denied.

Appellants reargued their motion for severance at the start of trial arguing that the defenses would be inconsistent. The State responded that no details had been given as to why the defenses were inconsistent and repeated that it would not seek to introduce any statement made by Johnson pertaining to Neill. The trial judge again properly overruled the motion for severance, noting that no details had been given or elicited as to what the defenses would be. (Vol. I, Tr. 17)

Appellants' motion to sever based on inconsistent defenses was, standing alone, insufficient to warrant a severance. Appellants' failed to meet their burden, as the moving party, to provide sufficient facts to enable the judge to properly rule on the

motion. In *Jones v. State*, 527 P.2d 169, 174 (Okl.Cr.1973), we stated:

It is this Court's opinion that it must always be the rule that severance must be requested by defense counsel with counsel apprising the trial court of circumstances which may develop which might prejudice other co-defendants. Without such information a judge cannot be presumed to know or can it be considered to appear that prejudice will result from the joinder.

■ The presentation of mutually antagonistic defenses will necessitate severance in most every case, while inconsistent defenses will not. However, in a case where inconsistent defenses are alleged, the trial judge should be on notice to inquire further into the specific evidence intended to be offered to support the claims. Regrettably, the terms "inconsistent defenses" and "antagonistic defenses" are often confused; and until the time that the terms are used properly, the trial judge must be ever vigilant and inquire further into the specific evidence supporting the defendant's claims.

If there was any doubt in the present case as to the defenses, it was obvious after opening statements that the defenses were not merely inconsistent, but were mutually antagonistic. Each defendant blamed the other while exculpating himself. After the opening statements had been made, the trial judge should have granted Appellants' motion for mistrial and severed the trials. At the very least, he should have recessed and inquired into the specific evidence to be presented to support the opening statements. The failure to grant the severance denied the Appellants the right to a fair trial. While we realize our analysis is made without the management pressures confronting the trial judge during the course of a jury trial, trial judges must recognize that it is often best to recess and address issues of this type outside the presence of the jury rather than continue a trial which is plagued with error from its very beginning.

By being tried together in a single trial, each Appellant was placed in the position

of having to defend against two accusers, the State and his co-defendant. The trial judge attempted several times during the course of the trial to remedy errors; but in light of the trial strategy employed by the defendants, no judge could have protected the defendants against their own hostility. Although we do not advocate taking comments out of context, the hostile tone of the trial is clearly illustrated by remarks made by each defense counsel.

Counsel for Appellant Johnson gave the first opening statement for the defense. He stated that Johnson was never in the bank nor anywhere near the bank on December 14. "... listening to State's witnesses I don't think there will be any doubt in their mind that this was a one man show." (Vol. III, Tr. 1016) Johnson was described as a "victim of Jay Neil" (sic), "used unknowingly and unwittingly by Jay Neil" (sic). (Vol. III, Tr. 1017) Counsel further stated that if the jury was convinced by the State's evidence that "either one of these two young men were in the bank on December the 14th, it certainly wasn't Robert Grady Johnson." (Vol. III, Tr. 1018)

Counsel for Appellant Neill opened by comparing the appearances of the defendants with the descriptions given by the eyewitnesses. He stated that the descriptions fit Johnson and not Neill. He proceeded to discuss the evidence as it related to the guilt of Johnson and concluded that Neill acted at the direction of Johnson. (Vol. III, Tr. 1019–1031)

After opening statements, Johnson objected, moved to quash the jury and, in the alternative, asked for a mistrial stating that "Defendant Johnson has only now become apprised of any inconsistent defenses." The motion was denied. (Vol. III, Tr. 1031–1032)

In the closing arguments, counsel for Appellant Johnson again addressed the jury first. He stated "... usually when I'm in a courtroom like this I have got to defend myself against one—one side. Robert Grady Johnson doesn't have that privilege today. He's got the State of Oklahoma coming from the front, he's got Mr.

Neil (sic) coming from his back." (Vol. VI, Tr. 2580) He stated that it was his intention during closing argument to discuss the evidence as it related to Johnson. However, in so doing, he spent most of his time discussing how the evidence related to Neill. He further commented that "he (Neill) is trying to stab Robbie Johnson in the back over there just like he did those people lying on the ground in the Geronimo Bank. And why is he doing that, because that is his only out, ladies and gentlemen. Because he was the one in there doing the stabbing, that's why." (Vol. VI, Tr. 2589–2590) Co-counsel for Johnson was also allowed to give a closing argument wherein he reemphasized that Johnson was merely a victim of Neill.

Counsel for Appellant Neill, in his closing argument, again challenged the descriptions of the assailants stating that if the descriptions were accurate, they did not apply to Neill. He argued that the State's evidence placed both defendants in the bank. However, the evidence also showed that Johnson was responsible for the actual killings. (Vol. VI, Tr. 2646–2679)

The conflicting trial strategies were also evident in a comment made by Johnson's counsel during the testimony of Bellen Robles. Polling the parties to determine the necessity of an in-camera hearing on Neill's renewed motion to suppress the identification, counsel stated "I anticipate helping him (the District Attorney) prosecute Mr. Neill on my cross-examination ...". (Vol. III, Tr. 1435b)

The finger pointing was even more intense during cross-examination. Thoroughly cross-examining each prosecution witness, the defendants not only sought to prove that the State failed to prove the case against them, but that the State had made the case against the other defendant. The defendants not only challenged the accuracy of the identifications, but defied the witnesses to explain why they identified one defendant and not the other. Each defendant down played any personal involvement and emphasized that of the co-defendant at every opportunity. Through the cross-examination of the prosecution

witnesses, each defendant became in effect the best witness against the other. The jury's acceptance of one defense tended to preclude the acquittal of the co-defendant. A different analysis would be used and a different result reached if the cross-examination of the State's witnesses had been merely a testing of identity.

The conduct of defense counsel and the inaction of the trial judge, when the antagonistic defenses were finally revealed, denied Appellants their constitutional right to due process. The failure of defense counsel to specify in the motion for severance the specific reasons in support of separate trials denied the trial judge the opportunity to cure any potential problems or errors at or before the time of trial. It is advantageous to all parties concerned to allow the trial judge, who sees and hears the proceedings first hand, the opportunity to solve any potential problems instead of waiting for an appellate court to review the issues at some point in the future.

■ The manner in which this trial was conducted shows a failure of the parties, both attorneys and trial judge, to fully discharge their legal obligations and duties. In an attempt to prevent a repeat of these errors, from the date of this opinion, a defendant is required, in seeking a separate trial, to do more than simply move for a severance under 22 O.S.1981, § 439. The defendant must specifically point out the conflict between the defenses and so demonstrate the prejudice which will be suffered in a joint trial. This should be done in a pre-trial motion for severance which shall be specific as to the basis of the request. If a severance is requested on the basis of mutually antagonistic defenses, the defendant shall set forth in the motion a statement which specifically identifies how the defenses are mutually antagonistic.

A defendant cannot rely on mere apprehensions of prejudice, but must state how the defendants would in fact be prejudiced by a joint trial. While we recognize that counsel may not always be privy to a co-defendant's trial strategy, it remains incumbent upon a defendant moving for a separate trial to show to the trial judge how he would be prejudiced by a joint trial. To cause the type of compelling prejudice that prevents co-defendants from obtaining a fair trial, the defenses must conflict to the point of being irreconcilable and mutually exclusive.

■ Likewise, the trial judge shall have a continuing duty at all stages of the trial to grant a severance if prejudice does appear. *Schaeffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960); *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir.1989). Even with full disclosure by the defense and inquiry from the court in pre-trial proceedings, exceptional cases may arise where a motion for separate trial has been denied, but during trial it appears that the joint trial is resulting in substantial injustice to one or more of the defendants. In such circumstances, justice and manifest necessity require that a mistrial be granted and the trial severed.

In making the determination to sever, the trial court should take into account the arguments put forth by counsel in written motions and at trial, and any other knowledge of the case developed from the proceedings.

■ On appeal, we will continue to review the trial court's denial of a motion to sever for an abuse of discretion. In order to establish an abuse of discretion, a defendant must show actual prejudice. *United States v. McClure*, 734 F.2d 484, 487 (10th Cir.1984). *See also United States v. Carter*, 760 F.2d 1568, 1574 (11th Cir.1985). A showing of a mere conflict of theories or that severance would have increased the chances for acquittal is insufficient.

Having examined the instant record for actual showing of prejudice, we find that each Appellant could only convince the jury of his own innocence by convincing them to convict his co-defendant. Obviously, this strategy resulted in irreparable prejudice to both Appellants and could only have been avoided by separate trials.

Requiring the Appellants to be tried jointly also resulted in a sharing of peremptory challenges. Had the trials been prop-

erly severed, each Appellant would have been entitled to nine (9) peremptory challenges. The severance having been denied, the trial court also denied Appellants' motions for nine (9) peremptory challenges each. (O.R. File 1, pg. 48; File 3, pg. 403; Vol. I, Tr. 271–272) During voir dire, the trial court did permit each defendant five (5) peremptory challenges. (Vol. I, Tr. 333)

The State argues that under 22 O.S.1981, §§ 622 and 655, Appellants were properly required to join their challenges. Section 622 provides that "when several defendants are tried together they cannot sever their challenges, but must join therein." Section 655, specifically providing an exception to the above rule when the defenses are inconsistent, states in pertinent part, that co-defendants tried jointly shall join in their challenges "provided, that when two or more defendants have *inconsistent* defenses they shall be granted separate challenges for each defendant as hereinafter set forth." Trial judges should be ever cognizant that the provisions of Section 655 do not require a showing of mutually antagonistic defenses to have a statutory right to separate peremptory challenges.

■■■■ Under these two provisions, the general rule is that co-defendants tried in a single trial must share peremptory challenges. *See Driver v. State*, 490 P.2d 1109, 1111 (Okl.Cr.1971). Co-defendants tried jointly who have inconsistent defenses shall be granted separate peremptory challenges. However, in some instances, based on the facts of the case, it may not be necessary to grant each co-defendant separate challenges.

■■■■ In analyzing the law of inconsistent defenses, we have found that in some cases, the "inconsistency" goes to the level of culpability while in other cases the "inconsistency" goes to guilt or innocence. Where the issue is restricted to the level of each co-defendant's culpability, co-defendants may be required to share peremptory challenges. *See Fox v. State*, 779 P.2d 562 (Okl.Cr.1989); *Fowler v. State*, 779 P.2d 580 (Okl.Cr.1989); *Master v. State*, 702 P.2d 375 (Okl.Cr.1985); *Wilhite v. State*, 701 P.2d 774 (Okl.Cr.1985); *Cooks v. State*,

699 P.2d 653 (Okl.Cr.1985); *cert. denied,* 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985). *See also James v. State*, 736 P.2d 541 (Okl.Cr.1987), *cert. denied,* 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987); *Van Woundenberg v. State*, 720 P.2d 328 (Okl.Cr.1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); on post-conviction, affirmed, unpublished, PC–87–633; *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 780 (1988). However, where the "inconsistency" in the defenses relates directly to guilt or innocence, co-defendants must be granted separate challenges. *Murray*, 528 P.2d at 740.

■■■■ What Section 655 does not address is the threat more serious to a fair trial than that of inconsistent defenses, and that is mutually antagonistic defenses. Based upon the foregoing, when mutually antagonistic defenses are present, the trial of co-defendants must be severed. The severance then guarantees each defendant the full count of peremptory challenges allowed by 22 O.S.1981, § 655.

■■■■ Although not constitutionally guaranteed, the peremptory challenge is "one of the most important of the rights secured to the accused". *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965), (*overruled on other grounds*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69), quoting *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1893). The trial court's denial of Appellants' requests for additional peremptory challenges in and of itself improperly impaired Appellants' exercise of this right, resulting in reversible error.

In *Murray*, we held that the co-defendants were improperly denied a full count of nine (9) peremptory challenges each. In finding this violation to be reversible error we stated:

The Constitution guarantees to every person accused of a crime, whether innocent or guilty, a fair and impartial trial and no person should be condemned who has been deprived over his objections to such a trial. Under ordinary circumstances where two parties are accused of

the same crime, it is in the interest of both justice and economy that they should be tried together, but under the circumstances of this case, it is our opinion that the trial court's denial of a severance was an abuse of discretion and *all proceedings from the denial of the defendants' Motion for Severance was a nullity from that point forward.* (emphasis added)

528 P.2d at 740. The same analysis is applicable in this case.

■■■ While the conduct of the trial in the instant case is unacceptable, the situation was exacerbated by the use of a statement made by Johnson exculpating himself and inculpating Neill. We find that the use of this statement violated Appellant Neill's right to confrontation under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The record shows that Neill and Johnson were arrested at the Holiday Inn in San Francisco, California. Neill was apprehended in the hallway outside his room while Johnson was arrested inside their hotel room. Johnson was ultimately transported to the FBI office where he was read the *Miranda* warning. He agreed to waive his rights, signed a written waiver and agreed to answer questions from FBI Agent Dave Knowlton. During this interview, Johnson stated that the robbery and homicides were planned and committed by Neill.

In a pre-trial motion hearing, the State informed the court that it did not intend to use the statement naming Neill as the perpetrator of the crimes, but did intend to introduce a redacted version, replacing Neill's name with the term "individual". At the start of trial, Neill again objected to the use of any statements naming himself as the sole perpetrator of the crime. This time, the State said that it would not use even the redacted version, but instead would ask Agent Knowlton four specific questions. These questions were designed to address Johnson's involvement without naming Neill.

The questions to be posed to Agent Knowlton were essentially whether the Agent had occasion to ask Johnson whether he knew about the bank robbery; did Johnson indicate any knowledge about what happened to the gun used in the robbery; did Johnson indicate any knowledge of the location of the clothes worn during the robbery and did Johnson indicate any knowledge of how much money was taken during the robbery. The prosecutor stated that he had reviewed these questions with Knowlton and the responses would not contain any mention of Neill. (Vol. IV. Tr. 1602–1603)

During the direct examination of Agent Knowlton, the State abided by its previous announcement and did not seek to introduce the written statement but asked the Agent the four earlier specified questions. (Vol. IV, Tr. 1642–1643) On cross-examination, counsel for Johnson inquired into the details surrounding the giving of the statement and the contents of the statement. Using Agent Knowlton's handwritten notes of the interview, counsel elicited information that Johnson had given a statement in which he stated that Neill planned and carried out the robbery and homicides and later told Johnson about it. (Vol. IV, Tr. 1661) Neill objected, based upon the court's previous ruling that no statements implicating Neill would be admitted, and requested a mistrial. Counsel alternately asked that the jury be admonished that any statements made by Johnson inculpating Neill could not be used against Neill. Both requests were denied. (Vol. IV, Tr. 1670–1676)

Johnson then introduced for admission into evidence the written statement given to Agent Knowlton on December 17, 1984. Labeled as Defense Exhibit J4, it was admitted into evidence along with Agent Knowlton's notes, labeled Defense Exhibit EJ3. Neill's objection to the admission of the evidence was overruled. (Vol. IV, Tr. 1684)

At a subsequent in-camera hearing, the issue of the statement was again raised. After a discussion with counsel for the State and both defendants, the trial judge found it was error to have admitted the statement into evidence. As the written

statement had not yet been seen by the jury, the trial judge determined that it would be excluded and that he would admonish the jury not to consider it. Neill's motion for a mistrial was overruled and the court admonished the jury that Johnson's statement implicating Neill was hearsay, "without evidentiary worth" and "should not be considered by this jury for any purposes whatsoever." (Vol. V, Tr. 2009)

In *Bruton,* the United States Supreme Court held that severance is necessary when the State seeks to introduce the confession of a co-defendant which directly inculpates a non-confessing co-defendant through the statement of a third party. "The purpose of a severance in such cases is to prevent the introduction of directly incriminating evidence without confrontation of the adverse party, in violation of the non-confessing co-defendant's Sixth Amendment rights." *Menefee,* 640 P.2d at 1383. A *Bruton* violation occurs whether error is instigated by the prosecution or by a co-defendant. *Williams v. State,* 542 P.2d 554, 574–575 (Okl.Cr.1975), *vacated on other grounds,* 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215 (1976). Even if the jury is instructed to consider the confession or admission only against the declarant, (as in this case) the Supreme Court in *Bruton* determined that the danger of misuse of the admission by the jury was too great to be constitutionally permissible.

This Court has found a *Bruton* violation reversible error when the facts showed that the non-confessing co-defendant was directly implicated in the confession of the other co-defendant. *Frye v. State,* 606 P.2d 599, 605 (Okl.Cr.1980); *Goodson v. State,* 562 P.2d 897, 901 (Okl.Cr.1977); *Edmondson v. State,* 515 P.2d 1158, 1161 (Okl.Cr.1973); *Clark v. State,* 509 P.2d 1398, 1401–02 (Okl.Cr.1973); *Fugett v. State,* 461 P.2d 1002, 1005 (Okl.Cr.1969).

Here, the statement made by Johnson directly implicated Neill. The introduction of the statement, not subject to effective cross-examination, deprived Neill of his right of confrontation under the Sixth Amendment in violation of *Bruton.*

The next question is was this error harmless? Neill argues that it was not harmless error relying on *Fahey v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). In *Fahey* the United States Supreme Court stated that in determining what is harmless error "the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." The Court also stated that error could be harmful and warrant reversal even where sufficient evidence existed to convict without the prejudicial and erroneously introduced evidence or testimony.

The State responds that any error was harmless and directs this Court to *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). In *Schneble* the Supreme Court stated that the mere finding of a *Bruton* violation does not automatically require reversal of the conviction. "In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the co-defendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." 405 U.S. at 431, 92 S.Ct. at 1059.

Reviewing all authority cited by both the State and the defense, it is clear that in certain circumstances a *Bruton* violation can be harmless error. However, we find that under the circumstances of this case, the error was not harmless. Appellants were charged with malice aforethought murder and in the alternative felony murder. The only direct proof of Neill's intent, if any, to commit either of the charged offenses was supplied by Johnson's statement naming Neill as the sole planner and perpetrator of the robbery and homicides. The introduction of the statement was so devastating to Neill that the jury could not have been expected to disregard it, even in the face of an admonition and instructions to do so. *See United States v. Gilliland,* 586 F.2d 1384, 1390 (10th Cir.1978).

Although the evidence against Neill was strong, we cannot say that the prosecution proved beyond a reasonable doubt that the

statement did not contribute to the verdict. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See also Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). Further, in light of the trial court's failure to sever the trials and grant each defendant nine preemptory challenges, we cannot find the use of Johnson's statement harmless.

The statement also had a profound effect against Neill in the sentencing stage of trial. Neill presented no witnesses or evidence in his behalf. Counsel argued only one mitigating circumstance, that Neill neither killed anyone nor contemplated that anyone would be killed. The jury was instructed that the death penalty may not be imposed upon one who "does not himself kill, attempt to kill, intend to kill, or contemplate that life would be taken." (O.R. File No. 6, pg. 911)

The statement effectively bolstered the State's theory that Neill was the actual assailant and that Johnson was merely an aider and abettor. Under these circumstances, Johnson's statement rendered the jury unable to determine the culpability of Neill fairly, impartially, and solely on the basis of evidence relevant to him, individually. The jury was effectively unable to make the necessary determinations under *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), to properly impose the death penalty.

Therefore, upon finding that both Appellants were improperly tried jointly and thereby forced to share peremptory challenges, and that a statement by Johnson exculpating himself and inculpating Neill was improperly introduced into the trial, the Appellants are constitutionally entitled to a new trial. We recognize that the basis of this decision may be referred to by some as a mere technicality. However, it is our hope that responsible citizens can set aside emotional responses and will never allow the Constitution itself to be so belittled as to become a mere technicality. It is incumbent upon each of us to remember that our Bill of Rights, the first ten amendments to the United States Constitution, were purchased with the blood of our forefathers to ensure our opportunity to live in a free society. Without enforcement, the rights mean nothing.

Accordingly, the Appellants' judgments and sentences must be and are hereby REVERSED and REMANDED FOR A NEW TRIAL.

BRETT and JOHNSON, JJ., concur.

PARK, J., concurs in part, dissents in part joined by LANE, P.J.

## APPENDIX

*Case Chronology: Neill v. State,*
Case No. F–85–526

*Johnson v. State,* Case No. F–85–559

8–20–85—Certificate of Appeal Issued

8–20–85—Appellants' Request for Stay of Execution Filed

9–3–85—Stay of Execution Issued

12–31–85—Petition in Error filed by Appellant Neill

12–31–85—Original Record Filed

1–15–86—Petition in Error filed by Appellant Johnson

5–7–86—Appellant Neill's Brief filed

5–7–86—Amended Petition in Error filed by Appellant Neill

5–14–86—Appellant Johnson's Brief filed

5–29–86—Second Amended Petition in Error filed by Appellant Neill

7–3–86—State's Response Brief filed

9–25–86—Reply Brief filed by Appellant Neill

12–5–86—Supplemental Authority for Oral Argument filed by Appellant Neill

12–5–86—Supplemental Authority for Oral Argument filed by State

12–10–86—Oral Arguments heard

4–30–87—Motion to Reverse & Remand for Failure to Hold Post–Examination Competency Hearing filed by Appellant Neill

5–27–87—Motion to Reverse & Remand for Failure to Hold Post–Examination Competency Hearing filed by Appellant Johnson

7–1–87—State's response to Motion to Reverse and Remand for New Trial

7-5-87—Reply to State's Response Filed by Appellant Neill

7-9-87—Case remanded to District Court of Comanche County to determine feasibility of holding post-examination competency hearing (Feasibility hearing held August 25, 1987; jury trial on competency held September 1 & 2, 1987; Appellants found competent)

10-22-87—Supplemental Brief Re: Requesting evidentiary hearing on allegations that promises of leniency were made to State's witness Lowell Jones in exchange for his testimony filed by Appellant Neill

11-23-87—Supplemental Brief Re: Lowell Jones issue filed by Appellant Johnson

12-21-87—Fourth Amended Petition in Error filed by Appellant Neill

12-21-87—Brief filed by Appellant Neill Re: Trial court's abuse of discretion in determining it was feasible to hold post-examination competency hearing

12-22-87—State's Response Brief filed Re: Urging evidentiary hearing on Lowell Jones issue not necessary; Motion to Supplement Record Re: Lowell Jones issue

1-20-88—Reply to State's response regarding evidentiary hearing in Lowell Jones matter filed by Appellant Neill

3-15-88—State's Response Brief filed Re: Competency issue

3-23-88—Appellants' Joint Statement Outlining Evidence which would be presented at an evidentiary hearing on Lowell Jones matter

4-20-88—Case remanded to District Court for evidentiary hearing on Lowell Jones matter. (Evidentiary hearing held August 22, 1988; court determined that no promises of leniency had been made to Lowell Jones in exchange for his testimony)

11-9-88—Joint Supplemental Brief of Appellants filed Re: Trial court abuse of discretion in finding no promises of leniency had been made to Lowell Jones

11-8-88—State's Response Brief filed Re: Lowell Jones issue

3-27-90—Supplemental Proposition Re: Anti-sympathy instruction filed by Appellant Johnson; Amended Petition in Error filed.

5-11-90—State's Response Brief filed Re: Anti-sympathy instruction

7-11-90—Motion to Remand for Evidentiary Hearing Re: failure to reveal exculpatory evidence filed by Appellant Neill

7-29-90—Supplemental Brief filed *pro se* by Appellant Johnson

11-14-90—Supplemental Authority for Oral Argument filed by Appellant Johnson

11-26-90—Supplemental Authority For Oral Argument filed by Appellant Neill.

12-4-90—Oral arguments heard in *Neill v. State.*

12-11-90—Oral arguments heard in *Johnson v. State*

12-14-90—State's Supplemental Authority from Oral Argument filed

PARKS, Judge, concurring in part/dissenting in part:

I agree with all aspects of the majority opinion except that which discusses a defendant's pre-trial severance motion. The majority has stated that if such motion is based upon mutually antagonistic defenses, "the defendant shall set forth in the motion a statement which specifically identifies how the defenses are mutually antagonistic." *Majority* at 890. It is my opinion that such a requirement contains two fatal flaws. First, the requirement appears to command a defendant to disclose what is essentially trial strategy. Second, the rule presupposes, and in effect mandates, that counsel for codefendants discuss their trial strategies with one another. Although such a procedure may be desirable, there is absolutely no precedent for requiring an accused or his codefendant to divulge their trial strategies.[1]

1. Although our recent decision in *Allen v. District Court of Washington County*, 803 P.2d 1164

(Okl.Cr.1990), provides for certain pretrial dis-

One possible solution to the problem of obtaining advance disclosure of antagonistic defenses would be the holding of ex parte, sealed hearings. In separate ex parte proceedings, counsel for the individual defendants could divulge such information as would enable the trial court to determine whether severance is warranted. Such procedure would allow the trial court to make an informed decision at the earliest possible time during the proceedings and would protect a defendant from being forced into revealing his defense/trial strategy to either the State or his codefendant(s).

## ORDER GRANTING WAIVER OF REHEARING AND DIRECTING ISSUANCE OF MANDATE

Now, on this, the 9th day of March, 1992, having examined the Appellee's waiver of rehearing in the above-styled and numbered cause, and having been fully advised of the premises, this Court finds that it should be, and the same is, hereby GRANTED.

The Clerk of this Court is ordered to issue the mandate forthwith.

IT IS SO ORDERED.

/s/ James F. Lane
JAMES F. LANE
Presiding Judge

/s/ Gary L. Lumpkin
GARY L. LUMPKIN
Vice Presiding Judge

/s/ Tom Brett
TOM BRETT
Judge

/s/ Ed Parks
ED PARKS
Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON
Judge

covery, the opinion does not require the disclosure of trial strategy.