Gregory RIVERS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–94–231.

Court of Criminal Appeals of Oklahoma.

Dec. 28, 1994.

Rehearing Denied Jan. 30, 1995.

Ronald L. Daniels, Tulsa, at Trial Counsel and Gloyd L. McCoy, Oklahoma City, Appellate Counsel, for appellant.

Michael Fesen, Fred H. Demier, Asst. Dist. Attys., Tulsa, Trial Counsel, and Susan B. Loving, Atty. Gen. of Oklahoma and Jennifer B. Miller, Asst. Atty. Gen., Oklahoma City, Appellate Counsel for appellee.

## OPINION

LANE, Judge:

Appellant, Gregory Rivers, was tried by jury and convicted of the crimes of Robbery with Firearms in violation of 21 O.S.1991, § 801; and Unlawful Wearing of a Mask while in Commission of a Felony in violation of 21 O.S.1991, § 1303 in Case No. CF–91–4184 in the District Court of Tulsa County, before the Honorable Jay Dalton, District Judge. Appellant was sentenced to ten (10) years imprisonment and five (5) years imprisonment, respectively. Appellant has appealed from this judgment and sentence.

Pursuant to the *Rules of the Court of Criminal Appeals,* Rule 11.3, 22 O.S.Supp. 1994, Ch. 18, App., Appellant applied to be placed on the Accelerated Docket of this Court. A verified consent to placement on the Accelerated Docket was attached to the application. The propositions or issues were

presented to this Court in oral argument on October 14, 1994, pursuant to Rule 11.5(c).

At approximately 8:40 p.m. on October 3, 1991, a black man and woman, who were both wearing nylon stocking masks and carrying guns, entered Frank's Country Inn, a restaurant. The two forced the cashier to open the register. The female thief emptied the contents of the register into a trash container. After making the cashier tell him where the rest of the money was located, the male thief removed a cash box from a desk in an office. The thieves left the restaurant with approximately $500.00 in cash, along with some checks and other items. The cashier hit a panic button to alert the police.

After the police arrived, the cashier informed them that the thieves had left headed toward the east. An officer in a police helicopter observed a car, a Cadillac, headed east. He followed the car to an apartment complex and orbited over it. An officer on the ground found some clothing next to the car. This clothing was later identified by the cashier as being a nylon pantyhose mask and a shirt similar to the one worn by the female thief. A bystander told the officer on the ground that he had just seen a black man run from the car to an apartment. Subsequently, a K–9 unit tracked from the car to the apartment.

Officers had surrounded the building containing the apartment when a black man and woman left the building and spoke with the officers. Subsequently, the officers removed several suspects from the building, including Appellant.

Appellant's wallet, containing his driver's license, was found in the Cadillac. At trial, Appellant admitted owning the Cadillac. Cash, checks, and other items taken from Frank's Country Inn were also found in the Cadillac. At trial, the bystander identified Appellant as the one who had run from the Cadillac to the apartment.

Juanett Ramsey, Appellant's co-defendant on both charges at trial, testified that she lived with Wallace Dixon and Jesse Watson in the apartment. On the evening of October 3, 1991, when she went into a bedroom to fold laundry, only Dixon was present in the front room. When she later returned to the front room, Dixon, Watson, and Appellant were all present. She left the apartment to check the dryer. The police were outside, and she was arrested.

When the police searched the apartment, they discovered a toy gun, a real gun, some keys, clothing, pantyhose, gloves, and a hat(s). The keys were later used to open the trunk of the Cadillac where many of the items, including cash, taken from the restaurant were discovered. The cashier identified the real gun as being similar to one of the guns used in the robbery. Four Winchester .357 hollow point rounds were recovered from the weapon. The trunk of the Cadillac also contained a shirt which the cashier later identified as being similar to that worn by the male thief.

Watson testified that on October 3, 1991, he was with Appellant at Tia Orr's home around 3:00 or 3:45 p.m. He refused to testify further regarding the robbery based upon his constitutional privilege against self-incrimination, although he did stipulate to five prior felony convictions. He was arrested in connection with the robbery, but his case was dismissed.

Appellant testified that he did not commit the offenses. Appellant testified that the bystander was mistaken as to the identity of the man who ran from the Cadillac to the apartment. He testified that he did not know that there were any items in the Cadillac and that he did not know what was in the closet at the apartment. He testified that he gave Watson the keys to his car, so Watson could go to the store, while they were at Orr's home around 6:00 p.m. Watson never returned. The next time Appellant saw his car, it was parked by the apartment. Appellant got a ride to the apartment around 8:00 p.m.

The jury found Ramsey to be innocent of both charges and found Appellant to be guilty of both charges.

In his first assignment of error, Appellant alleges that the trial court erred by giving an instruction on flight. Appellant bases his argument on *Mitchell v. State*, 876 P.2d 682 (Okl.Cr.1993). In *Mitchell*, the defendant

was tried by jury and convicted of robbery with a firearm. The defendant put on no defense at trial. On appeal, the defendant argued that the flight instruction was improper. *Id.* at 683.

This Court held that "instructions on flight pertaining to departure should be given only in cases where the evidence is controverted by the defendant and as an exception rather than as a rule." In addition, we indicated that a defendant must first offer evidence in explanation of the departure before a flight instruction may be given. *Id.* at 684–85. This holding in *Mitchell* was grounded on the elementary principle, codified in 22 O.S.1981, § 836, that "the accused shall be presumed to be innocent until proven guilty." *Id.* at 685.

Under *Mitchell*, this Court would have to determine whether the Appellant offered evidence explaining his departure. In *Mitchell*, the defendant offered no defense at trial. In the present case, the Appellant offered an alibi defense. We find that Appellant never offered evidence explaining his alleged "departure." Specifically, Appellant's defense is that he was someplace other than the scene of the crime. In other words, Appellant denies being present at the scene of the crime and, therefore, offered no evidence explaining his alleged "departure" therefrom. Thus, were we to apply the holding of *Mitchell* to the instant case, the giving of the flight instruction would appear to have been erroneous.

The State, however, argues that *Mitchell* should not be applied retroactively. In that event, the standard set forth in the earlier case of *Farrar v. State*, 505 P.2d 1355 (Okl. Cr.1973), would be applicable. In *Farrar*, we established that "the standard governing jury instructions relative to flight [would] not [be] whether other explanations may be explicable of the circumstances surrounding apprehension, but whether, viewed in the context of other evidence, it tends to establish guilt or innocence." *Id.* at 1361.

■ We note that the United States Supreme Court held in *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649, 661 (1987), that new constitutional rules of criminal procedure are "to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." We find, however, that the rule in *Mitchell* was an interpretation and application of state law and did not create any new constitutional right. *Griffith*, therefore, would not be applicable. *Accord Lackey v. Scott*, 28 F.3d 486, 491 (5th Cir.1994) ("the federal retroactive principles discussed in *Griffith* have no bearing on the state's application of [a new rule not required by the federal constitution or law]"); *Diggs v. Owens*, 833 F.2d 439, 442 (3d Cir.1987) (held that "*Griffith* should be confined to constitutional rules of criminal procedure and thus does not require retroactive application of new procedure and thus does not require retroactive application of new procedural decisions not constitutionally grounded").

■ This conclusion finds additional support in the Supreme Court's recognition of the principle that, when questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions. *See Harper v. Virginia Dept. of Taxation*, 509 U.S. ——, ——, 113 S.Ct. 2510, 2519, 125 L.Ed.2d 74, 88 (1993); *American Trucking Associations, Inc. v. Smith*, 496 U.S. 167, 177, 110 S.Ct. 2323, 2330, 110 L.Ed.2d 148, 159 (1990); *Great Northern R. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360, 366 (1932).

■ Prior to *Griffith*, the federal standard for retroactivity was the following:

[t]he criteria guiding resolution of the [retroactivity] question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

*Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, 1203 (1967). Subsequently, we adopted this standard to determine the retroactivity of our decisions interpreting questions of state law. *See Edwards v. State*, 591 P.2d 313, 317 (Okl.Cr.

1979); *Poke v. State*, 515 P.2d 252, 254 (Okl. Cr.1973). We find that the validity of this standard, regarding the retroactivity of our decisions interpreting questions of state law, is not affected by *Griffith*.

■ We turn now to the three factors contained within this standard and determine their impact on the question of the retroactivity of our ruling in *Mitchell*. First, the purpose of the new rule is to prevent the violation of the statutory principle that an accused shall be presumed to be innocent until proven guilty. Second, we find that law enforcement relied extensively on the old standard; a flight instruction would have been given in the proper situation by every court in this jurisdiction based on the law as it existed before *Mitchell*. Third, the effect on the administration of justice of a retroactive application of the new rule would be incredibly burdensome—potentially, a new trial would have to be granted in every case, which was not final when *Mitchell* was decided, in which a flight instruction was given contrary to *Mitchell*, if it resulted in prejudicial error.

On the other hand, if *Mitchell* is applied only prospectively, Appellant would be placed in the same situation as those on post-conviction, eliminating the inherent inequality that results between appellants whose appeals are separated only by time. A prospective application would also eliminate the inherent unfairness which would otherwise be placed on the shoulders of the lower court, having given a flight instruction in good faith.

Thus, we hold that *Mitchell* was prospective only and is not applicable in the present case, which was pending when *Mitchell* was decided. Cf. *Nguyen v. State*, 879 P.2d 148, 149 (Okl.Cr.1994) (this Court refused to apply *Mitchell* retroactively to a final decision).

We turn next to the question of whether the flight instruction was properly given in the present case, under the standard used prior to *Mitchell*. Specifically, we must determine whether, when viewed in the context of the other evidence, the evidence of Appellant's alleged flight tends to establish guilt or innocence. *Farrar*, 505 P.2d at 1361.

■ In the present case, the pivotal question is one of identification. Was Appellant the one who committed the charged offenses? Appellant presented an alibi defense to the effect that he was elsewhere. The State, however, presented competent evidence identifying the Appellant as one of the thieves who committed the charged offenses. A vital link in this chain of evidence consisted of the flight of the thieves, especially when considered in connection with the discovery of items stolen from the restaurant in Appellant's car, the discovery of items similar to those used or worn by the thieves in the apartment, and the fact that Appellant was removed from the building containing the apartment when taken in custody. We find that, when viewed in the context of the other evidence, the evidence of Appellant's alleged flight tends to establish guilt or innocence. Thus, the flight instruction was properly given under *Farrar v. State*, 505 P.2d 1355 (Okl.Cr.1973), and this assignment of error is without merit.

■ In his second assignment of error, the Appellant contends that the prosecution of both the charges against him (i.e. Robbery with a Firearm and Unlawful Wearing of a Mask while in Commission of a Felony) constituted double jeopardy. The test for double jeopardy in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), states that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Thus, if each crime requires proof of a fact that the other does not, double jeopardy does not exist even if a substantial overlap is present. *Ellis v. State*, 834 P.2d 985, 990 (Okl.Cr.1992); *Posey v. State*, 805 P.2d 687, 688 (Okl.Cr.1991).

■ In the present case, double jeopardy is not present for the following reasons. First, the crime of Robbery with a Firearm was completed when Appellant, using a firearm (or an imitation firearm capable of raising in the mind of the person threatened with such device a fear that it is a real firearm), robbed the restaurant. 21 O.S.1991, § 801.

Further, the crime of Robbery is "a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." 21 O.S.1991, § 791. Second, the crime of Unlawful Wearing of a° Mask while in Commission of a Felony was completed when Appellant, while masked, assaulted the cashier with a firearm. 21 O.S.1991, § 1303. These crimes consist of "separate and distinct elements, none of which merge into proof of any of the others." *Ziegler v. State*, 610 P.2d 251, 254 (Okl.Cr. 1980). Because each crime plainly requires proof of different facts, the prosecution for each of these crimes was not barred by the state and federal prohibitions against double jeopardy. *Posey*, 805 P.2d at 688.

■ In his third assignment of error, Appellant argues that the trial court erred by not granting a severance based upon *Neill v. State*, 827 P.2d 884, 886 (Okl.Cr.1992). In *Neill*, this Court stated:

> The decision to grant or deny severance is left to the sound discretion of the trial court. This Court has recognized that it is in the interest of both justice and economy to jointly charge and try those who have allegedly participated in the same criminal act, and we have urged trial courts to do so whenever possible. Absent an abuse of discretion resulting in prejudice to the appellant, the decision of the trial court will not be disturbed on appeal....
>
> We have determined that one defendant's attempt to cast blame on the other is not in itself a sufficient reason to require separate trials.... Mere conflicting defenses, standing alone, do not constitute the showing of prejudice necessary for judicial severance....
>
> However, antagonistic defenses may require that defendants be tried separately....
>
> ... "defenses are antagonistic where each defendant is attempting to exculpate himself and inculpate his co-defendant."

*Id.* at 886–87 (citations omitted). In the present case, both Appellant and his co-defendant, Juanett Ramsey, presented a defense to the effect that he or she, respectively, did not commit the offense and did not know who did. These defenses do not constitute mutually antagonistic defenses as the trier of fact was not necessarily required to disbelieve the defense of one to believe the defense of the other. *Id.* at 887. The trial court, therefore, did not abuse its discretion in denying a severance. *See e.g. Funkhouser v. State*, 734 P.2d 815, 817–818 (Okl.Cr.1987).

For the reasons set forth in this opinion, Appellant's Judgment and Sentence for Robbery with Firearms and Unlawful Wearing of a Mask while in Commission of a Felony should be, and hereby is, **AFFIRMED.**

LUMPKIN, P.J., and JOHNSON, V.P.J., and STRUBHAR, J., concur.

CHAPEL, J., specially concurs.