Benny Dwight JONES, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–91–433.

Court of Criminal Appeals of Oklahoma.

June 30, 1995.

Rehearing Denied Aug. 1, 1995.

636

Thomas H. Stringer, Jr., Henryetta, for appellant at trial.

Thomas C. Giulioli, Gregory Stidham, O.R. Barris, III, Okmulgee, for the State at trial.

Carol Seacat, Seacat & Seacat, Okmulgee, for appellant on appeal.

Susan Brimer Loving, Atty. Gen., A. Diane Blalock, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

### *OPINION*

STRUBHAR, Judge:

Benny Dwight Jones, Appellant, was tried by jury in the District Court of Okmulgee County, Case No. CRF–90–144, before the Honorable Anne Moroney, District Judge.[1] Jones was convicted of Murder in the first degree (21 O.S.Supp.1989, § 701.7(B)), Possession of a Stolen Vehicle (47 O.S.1981, § 4–

103), Knowingly Concealing Stolen Property (21 O.S.1981, § 1713), and Using a Weapon in the Commission of a Crime (21 O.S.Supp. 1982, § 1287). The jury recommended death for murder in the first degree after finding the existence of three aggravating circumstances[2], five (5) years imprisonment and a five thousand dollar ($5,000.00) fine for possession of a stolen vehicle, five (5) years imprisonment for knowingly concealing stolen property, and ten (10) years imprisonment for using a weapon in the commission of a crime. The trial court sentenced Jones accordingly. From this Judgment and Sentence, he appeals. We affirm in part, reverse in part and remand this case to the District Court to conduct a new sentencing hearing.

### FACTS

On June 28, 1990, Jones and co-defendant Hammon entered Truck 'N Things, an automotive accessory and parts store in Okmulgee, Oklahoma owned by Eugene Slape. Jones approached Slape at the front counter seemingly to purchase merchandise. As Slape rang up the sale and the cash register drawer opened, Jones robbed him. Jones claimed Slape appeared to be reaching for a gun so he shot him three times.

While Jones was confronting Slape at the front counter, Hammon ran to the back room where he found Bradley Slape, Eugene Slape's son, tinting windows on a Dodge pickup. Hammon told Bradley Slape, "I said this is a fucking holdup." Bradley Slape jumped in the pickup seat and begged Hammon not to shoot. Hammon pointed his gun at Bradley Slape's head and then began to run from the room. Bradley Slape raised his head to see where Hammon was and Hammon stopped running and again pointed his gun at Bradley Slape's head.

---

1. Jones was tried jointly with co-defendant Richard Eugene Hammon who perfected his appeal separately under Court of Criminal Appeals Case No. F–91–432. The trial was conducted in three stages, guilt/innocence, punishment for all non capital crimes and punishment for murder in the first degree.

2. [1] the defendant knowingly created a great risk of death to more than one person; [2] the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and [3] the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S.1981, § 701.12(2), (5) and (7).

When Bradley Slape heard the front door close, he went to check on his father and found him lying on the floor staring at the ceiling. Bradley Slape contacted the police and tried to assist his father. The police arrived shortly thereafter and all resuscitation measures proved unsuccessful.

Bradley Slape told Detective Travis Tolar that he knew the man who ran into the back room and pointed a gun at his head. He advised he did not know his name, but could identify him from a high school yearbook. Detective Tolar obtained an Okmulgee High School yearbook and Bradley Slape identified Hammon as the man who pointed a gun at his head.

As Detective Tolar was leaving Truck 'N Things he received a tip from an informant that Hammon was "staying at the Projects" and that Jones was with him. Detective Tolar and several other officers proceeded to the "Projects" to apartment 603–A. Detective Tolar knocked on the door of 603–A and Hammon and Jones were arrested without incident.

After obtaining consent to search from Cassandra Jones, the police found merchandise from Truck 'N Things in the apartment. They also found and seized $59.00 hidden under a mattress in the bedroom Jones exited upon arrest and $75.00 in a purse. Jackie Alexander, also present during the search, testified that when Hammon and Jones arrived at the apartment at 11:30 a.m., they were carrying a box and some car spinners.[3] Shortly after arriving at the apartment, Hammon asked Alexander to take his black bag to her "mama's house". Alexander took the bag to her friend Charlotte Beard's house instead and hid it in a closet. Charlotte Beard consented to a search of her apartment where the police seized a black bag containing two .22 caliber weapons, one with three shots fired.

Both Jones and Hammon confessed to their participation in the robbery/homicide. Both confessions were admitted in their joint trial. Neither Jones nor Hammon testified nor put on evidence in first stage.

## PRE–TRIAL ISSUES

### I. DISCOVERY

In his first proposition of error Jones argues he was denied a fair trial because the trial court improperly limited the scope of discovery and the State failed to comply with the trial court's discovery orders in violation of *Allen v. District Court of Washington County*, 803 P.2d 1164 (Okl.Cr.1990), *modified by, Richie v. Beasley*, 837 P.2d 479 (Okl. Cr.1992).

First, Jones argues the trial court improperly restricted discovery to "only those items in the District Attorney's possession and, in certain cases, to only those items intended to be used at trial."[4] Jones claims effective discovery could have been frustrated by withholding evidence from the district attorney.

■ On March 26, 1991, the trial court heard lengthy, and often times misdirected, argument concerning discovery. Initially, Jones' and Hammon's lawyers requested copies of everything in the prosecution's file. The trial court denied this broad request and required counsel to make specific requests. The trial court included in the scope of its discovery order the prosecutor's staff and those who regularly report to the prosecutor.[5] The trial court noted the district attorney has an obligation to find out if he has all the necessary information.[6] However, the trial court did not require the district attorney to ask every possible officer who worked on the case if they had any information, just those in command who would know who worked on the case.[7] While defense counsel lost sight of this initial ruling and argued the court was improperly limiting discovery, the

3. Car spinners are decorative devices attached to car wheels.

4. *See* Appellant's Brief at p. 14.

5. Mot.Tr. 3/26/91 at 83.

6. Mot.Tr. 3/26/91 at 115.

7. Mot.Tr. 3/26/91 at 83.

trial court's order complied with *Allen* and no abuse of discretion is shown.[8]

■ Next, Jones complains he was not provided Agent Page's notes. The record shows Jones was provided with Agent Page's notes taken during his interviews with both Hammon and Jones.[9] At trial Agent Page testified he produced all of his reports, but not all of his notes. Recently in *Allen v. State*, 862 P.2d 487, 490–91 (Okl.Cr.1993), this Court declined to extend *Allen* to include prosecution witness's work papers. This is consistent with this Court's prior holdings that the State is not required to produce notes of law enforcement officers as they are work-product. *Wilhite v. State*, 701 P.2d 774, 777 (Okl.Cr.1985). We continue to uphold the work-product exception to discoverable material and find Jones was not entitled to Page's other work-product notes. *Wilhite*, 701 P.2d at 777.

■ Jones also argues he was not provided the notes of Agent Collins taken during an interview with Charlotte Beard. Collins testified his notes were made into a report and included in the report sent to the district attorney.[10] Jones received two O.S.B.I. reports.[11] There is no evidence the information contained in Collins' notes was not contained in his report. Accordingly, Jones was not entitled to Collins' work-product notes since he had the O.S.B.I. reports.

■ Jones argues he was not provided all the documents in the medical examiner's file. At trial the medical examiner testified that there were other documents in his agency file in addition to his autopsy report. Jones was provided with the complete autopsy report. We find the other miscellaneous internal agency notes and documents contained in the medical examiner's file constitute work-product papers and are not discoverable under *Allen*. *Allen v. State*, 862 P.2d at 490–91.

Jones claims the trial court erred in failing to order the State to produce all of its photographs. The trial court ordered the State to produce all of the photographs it intended to use at trial pursuant to *Allen*. Jones fails to state how he was prejudiced by the trial court's limitation on photographs. We find the trial court's order complied with *Allen* and Jones' complaint is meritless. *Allen*, 803 P.2d at 1168.

Jones complains that the State failed to produce the statements of Charlotte Beard and Patrick White and all of the fingerprint reports from O.S.B.I. Agent Mullins. Jones argues the trial court must impose some sort of sanction provided in *Allen* for these violations. The State argues Jones fails to show the evidence withheld was favorable to his defense and material to either his guilt or punishment. *Fritz v. State*, 811 P.2d 1353 (Okl.Cr.1991).

In *Skelly v. State*, 880 P.2d 401, 408 (Okl.Cr.1994), this Court held when *Allen* violations occur, the trial court must fashion the appropriate relief. The record in the instant case shows Jones was given a copy of White's statement at the April 2, 1991 motion hearing.[12] However, during trial White testified he gave a statement to an O.S.B.I. agent as well. A bench conference was held and the State advised that Detective Tolar had been in possession of statements from White and Beard and that he had lost them.[13] The State advised it had re-checked its files and could not locate the statements.[14]

After listening to the argument of the prosecution, the trial court overruled the motion to strike White and Beard's testimony made by Jones' counsel. The trial court made no specific finding that its discovery order was violated. By its ruling, we can safely assume that the trial court believed the State had complied with its discovery order and produced all the evidence in its

8. In an attempt to circumvent the trial court's order and obtain the police officer's notes, Jones filed subpoenas duces tecum which were quashed by the trial court.

9. Mot.Tr. 4/2/91 at 21.

10. Tr. at 418–19.

11. Mot.Tr. 4/2/91 at 3.

12. Mot.Tr. 4/2/91 at 2.

13. Tr. at 296.

14. Tr. at 296.

possession. Therefore, the trial court declined to impose any appropriate sanction.

Jones also argues the State failed to produce two reports issued by Agent Mullins. Agent Mullins testified he issued three reports of his fingerprint findings. The record indicates only Mullins' initial report was given to Jones.[15] Neither Jones nor Hammon objected to the testimony of Agent Mullins or argued reports were withheld. Agent Mullins testified he *believed* he sent his subsequent reports to the District Attorney. Because no record was made concerning these reports, we cannot conclude whether a violation of the trial court's discovery order occurred. We, therefore, cannot conclude that the trial court abused its discretion in failing to sanction the State for a discovery violation.

Finally, Jones argues the State failed to produce copies of any mail or written messages, including incoming and outgoing mail from or to Jones.[16] At trial the State sought to introduce three letters allegedly written by Jones after one of its witnesses failed to identify Jones' handwriting in a letter disclosed to the defense. The State explained that they had received the letters four days prior to trial and never intended to use them. After an in camera hearing, the State withdrew the letters to avoid error. Because the letters were not admitted, no error occurred. Accordingly, this proposition is denied.

## II. MOTION FOR EXPERT

In his second proposition, Jones argues he was denied a fair trial because the trial court refused to provide funds for a private investigator. 22 O.S.Supp.1985, § 464(B).

■ Title 22 O.S.Supp.1985, § 464(B) had not been repealed during the instant case. Section 464(B) allowed the district court, in its discretion, to authorize defense counsel in a capital case to obtain services which are reasonably necessary to permit the defendant to adequately prepare and present his defense at trial. *Smith v. State*, 819 P.2d 270, 274 (Okl.Cr.1991), *cert. denied*, 504 U.S.

959, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992). However, section 464(B) provided "[n]o application for compensation of such expert witnesses and other services shall be heard by the trial court prior to final trial disposition." As in *Smith*, Jones' application for approval of funds was filed prematurely. *Smith*, 819 P.2d at 274.

■ Moreover, before the statute authorizes access to expert services, a capital defendant must demonstrate that the services are necessary and that he is financially unable to pay for them. *Id. See also Stafford v. Love*, 726 P.2d 894, 896 (Okl.1986). The record of the hearing on Jones' application shows that defense counsel argued that "fairness" required granting his request for funds.[17] Without citing any specifics counsel said he needed an investigator because he was a sole practitioner and his contact with Jones was limited because he was being incarcerated out of county.

■ This Court continues to hold that defendants must make a sufficient showing that such an expert is necessary to prepare an adequate defense. *Castro v. State*, 844 P.2d 159, 175 (Okl.Cr.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 135, 126 L.Ed.2d 98 (1993). As in *Castro* there does not appear to be a great risk of error by denying Jones' request for this investigator. *Id.* While Jones' attorney may have been a sole practitioner with a large list of witnesses to interview before trial, this alone is not sufficient to meet the requirements of *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Accordingly, we find this proposition is without merit.

## III. SEVERANCE

In his third proposition of error, Jones argues he was prejudiced by the joint trial with his co-defendant, Richard Hammon. He maintains the trial court should have granted his severance motion because his defense was mutually antagonistic to Hammon's defense. Jones admits in his brief that his case does not fall "exactly within the

---

15. Tr. at 480–81.

16. *See* Appellant's Brief at p. 18.

17. Mot.Tr. 3/26/91 at 6.

traditional definition of 'mutually antagonistic'." [18] Jones claims his trial strategy was to admit nothing, attack the State's case by cross-examination and attempt to suppress his confession. He argues this was antagonistic to Hammon's defense of admitting guilt and arguing he was less culpable than Jones.

This Court has consistently held that the decision to grant or deny severance is left to the sound discretion of the trial court. *Neill v. State,* 827 P.2d 884, 886 (Okl.Cr. 1992). Absent an abuse of discretion resulting in prejudice to the accused, the decision of the trial court will not be disturbed on appeal. *Id.; Cooks v. State,* 699 P.2d 653, 658 (Okl.Cr.1985), *cert. denied,* 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985); *Menefee v. State,* 640 P.2d 1381, 1383 (Okl.Cr. 1982).

We have consistently held severance is required if defenses are mutually antagonistic. *Neill,* 827 P.2d at 888. Defenses are mutually antagonistic where each defendant attempts to exculpate himself and inculpate his co-defendant. *Neill,* 827 P.2d at 887; *VanWoundenberg v. State,* 720 P.2d 328, 331 (Okl.Cr.1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986). An attempt to cast blame on one's co-defendant is not in itself a sufficient reason to require separate trials. *Neill,* 827 P.2d at 886; *Fox v. State,* 779 P.2d 562, 567–68 (Okl. Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Master v. State,* 702 P.2d 375, 378 (Okl.Cr.1985). *See also United States v. Calabrese,* 645 F.2d 1379, 1384 (10th Cir.1981), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981). Each defendant must blame the other in an attempt to exonerate himself. Therefore, a showing that defenses conflict is not sufficient to show the requisite prejudice necessary for judicial severance. *Neill,* 827 P.2d at 886–87; *Vowell v. State,* 728 P.2d 854, 857 (Okl.Cr.1986).

Jones argues his strategy to admit nothing and make the State prove its case

was antagonistic to Hammon's strategy to concede guilt and focus on culpability. In opening statement Jones' lawyer spoke first. He told the jury that "[i]f you listen closely to the evidence you may very well hear all that Mr. Guilioli told you you would hear." [19] He went on to tell the jury that they would also hear that Jones was eighteen years old and had no history of violence.[20] He concluded his remarks by telling the jury this was a case of "overkill." [21] Hammon's lawyer then conceded his client's participation in the robbery but focused on the fact that his client did not shoot anyone. At no time during trial did Jones or Hammon try to exculpate himself and inculpate the other. Because neither Hammon nor Jones attempted to exculpate himself and inculpate each other, their defenses were not mutually antagonistic. *Neill,* 827 P.2d at 887. Therefore, severance was not required. Accordingly, we find the trial court did not abuse its discretion in denying Jones' motion to sever.

## IV. MOTION TO SUPPRESS

Jones argues in his seventeenth proposition of error the trial court should have suppressed the evidence seized from Cassandra Jones' apartment consisting of the car speakers and car spinners from Truck 'N Things, money and a shell casing. Jones argues the seizure was invalid because the police did not obtain the consent of Jones prior to searching Cassandra Jones' apartment.

Jones was arrested shortly after the Slape robbery/homicide in Cassandra Jones' apartment. The police obtained consent to search from Cassandra Jones, the apartment lessee. Proper consent will act as a waiver of the usual warrant requirement for a search. *Sullivan v. State,* 716 P.2d 684, 686 (Okl.Cr.1986). This Court considered the issue of whose consent will constitute an effective waiver of the Fourth Amendment's warrant requirements in *Sullivan,* 716 P.2d at 686, wherein we relied upon *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39

18. *See* Appellant's Brief at p. 25.

19. Tr. at 254.

20. Tr. at 254.

21. Tr. at 254.

L.Ed.2d 242 (1974). *See also, Reeves v. State,* 818 P.2d 495, 503 (Okl.Cr.1991). In *Matlock,* the United States Supreme Court held that when the prosecution seeks to justify a warrantless search by proving consent, it is not limited to showing consent was given by the defendant; instead, it may show that consent was obtained from a third party who possessed common authority over, or sufficient relationship to, the premises or property to be searched. *Reeves,* 818 P.2d at 503. The mutual use of property, or joint access or control of property, was held to be generally sufficient. *Id.*

We find Cassandra Jones, the lessee, had standing to give consent. Accordingly, the trial court did not err in denying Jones' motion to suppress.

## JURY SELECTION ISSUES

### I. PEREMPTORY CHALLENGES

Jones also argues in his third proposition of error he was denied a fair trial because the trial court denied him nine separate peremptory challenges.[22] He maintains that his theory of defense was inconsistent with co-defendant Hammon in both stages of trial and therefore he was entitled to nine separate peremptory challenges. 22 O.S.1981, § 655.

The State argues that under 22 O.S.1981, §§ 622 and 655, Jones and Hammon were properly required to join in their challenges. Section 622 provides that "[w]hen several defendants are tried together they cannot sever their challenges, but must join therein." Section 655 specifically provides an exception to the section 622 rule when the defenses are inconsistent. Section 655 states in pertinent part, that co-defendants tried jointly shall join in their challenges "provided, that when two or more defendants have *inconsistent* defenses they shall be granted separate challenges for each defendant as hereinafter set forth." (Emphasis added).

In *Neill,* 827 P.2d at 891, this Court stated the general rule that co-defendants tried in a single trial must share peremptory challenges, provided that co-defendants tried jointly who have inconsistent defenses shall be granted separate peremptory challenges. However, the *Neill* court made a distinction between cases in which the "inconsistency" goes to the level of culpability and those in which the "inconsistency" goes to guilt or innocence. *Id.*

"Where the issue is restricted to the level of each co-defendant's culpability, co-defendants may be required to share peremptory challenges. *See Fox v. State,* 779 P.2d 562 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Fowler v. State,* 779 P.2d 580 (Okl. Cr.1989); *Master v. State,* 702 P.2d 375 (Okl.Cr.1985); *Wilhite v. State,* 701 P.2d 774 (Okl.Cr.1985); *Cooks v. State,* 699 P.2d 653 (Okl.Cr.1985), *cert. denied,* 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985). *See also James v. State,* 736 P.2d 541 (Okl.Cr.1987), *cert. denied,* 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987); *VanWoundenberg v. State,* 720 P.2d 328 (Okl. Cr.1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); on postconviction, affirmed, unpublished, PC–87–633; *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 780 (1988). However, where the 'inconsistency' in the defenses relates directly to guilt or innocence, co-defendants must be granted separate challenges. *Murray* [*v. State* ], 528 P.2d [739] at 740 [ (Okl.Cr.1974) ]." *Neill,* 827 P.2d at 891.

■ In the instant case, Hammon conceded his guilt from opening statement. He simply argued that he did not do the actual shooting and therefore, was less culpable. Jones argued he was less culpable because of his youth and lack of a violent criminal past. Any inconsistency in Hammon's and Jones' defenses went to their level of culpability and therefore, it was not error to deny Jones nine separate peremptory challenges. *Neill,* 827 P.2d at 891. We find this proposition is without merit.

22. The trial court granted Hammon and Jones a total of ten peremptory challenges to be shared between them.

## II. LIFE QUALIFYING THE JURY

In his fourth proposition of error Jones argues he was denied due process of law and trial by an impartial jury. He contends the trial court erred in refusing to allow defense counsel to inquire whether a potential juror would automatically impose the death penalty upon a finding of guilt.[23] *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

The trial court conducted the death qualifying portion of voir dire.[24] However, both prior to voir dire and after death qualifying the venire panel, Hammon's and Jones' lawyers[25] moved to question the jury about the other penalties i.e. life and life without parole. The trial court refused. In response to the adverse ruling Hammon's and Jones' lawyers jointly offered a paper entitled *Voir Dire in Capital Punishment Cases* authored by Robert A. Ravitz as an offer of proof stating they would ask all of the questions suggested in the paper. Specifically noted by Jones' counsel was the question:

> Ladies and Gentlemen of the Jury, you have indicated your ability to impose the death penalty in a proper case. Is there anyone who believes that in a first degree murder conviction, automatically you must impose the death penalty, regardless of other circumstances and facts in this case.

The trial court refused to allow either counsel to so inquire.

■ In *Morgan,* the Supreme Court found that "[a] juror who will automatically vote for the death penalty in every case will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do." *Morgan,* 504 U.S. at 729, 112 S.Ct. at 2229, 119 L.Ed.2d at 502. Therefore, based on the requirement of impartiality embodied in the Due Process Clause of the Fourteenth Amendment, a capital defendant may challenge for cause any prospective juror who maintains that the death penalty should automatically be imposed upon a finding of guilt. *Morgan,* 504 U.S. at 727–31, 112 S.Ct. at 2229–30, 119 L.Ed.2d at 503. "If even one such juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence." *Morgan,* 504 U.S. at 729, 112 S.Ct. at 2230, 119 L.Ed.2d at 503.

■ The State raises no challenge to the foregoing precepts, but argues instead that other questioning during voir dire assured Jones a fair and impartial jury able to follow the law.[26] Part of the guaranty of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors. *Id.; Dennis v. United States,* 339 U.S. 162, 171–172, 70 S.Ct. 519, 523–524, 94 L.Ed. 734 (1950); *Morford v. United States,* 339 U.S. 258, 259, 70 S.Ct. 586, 587, 94 L.Ed. 815 (1950). "Hence, '[t]he exercise of [the trial court's] discretion, and the restriction upon inquiries at the request of counsel, [are] subject to the essential demands of fairness.'" *Morgan,* 504 U.S. at 730, 112 S.Ct. at 2230, 119 L.Ed.2d at 503 *quoting, Aldridge v. United States,* 283 U.S. 308, 310, 51 S.Ct. 470, 471–472, 75 L.Ed. 1054 (1931)).

This Court must decide whether the questions propounded during voir dire were sufficient to satisfy Jones' right to exercise intelligently his unlimited challenges for cause against those biased persons on the venire who as jurors would unwaveringly impose death after a finding of guilt. Prior to the voir dire of the venire, the trial court made a few preliminary announcements regarding seating. The trial court did not give any of

---

23. Such inquiry is often referred to as "life qualifying" the jury or "reverse *Witherspoon*" questioning (*See Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)).

24. Judge Moroney called each juror individually into chambers and asked, "[i]n a case where the law and the evidence warrant, in a proper case, could you, without doing violence to your conscience, agree to a verdict imposing the death penalty?" Those prospective jurors who said they could not impose the death penalty under any circumstances were excused for cause.

25. Appellant Hammon was represented by Duane A. Woodliff of Henryetta, Oklahoma. Benny Jones was represented by Thomas H. Stringer, Jr. of Henryetta, Oklahoma.

26. The same argument was raised by the State of Illinois and rejected in *Morgan. Id.* at 728–31, 112 S.Ct. at 2230, 119 L.Ed.2d at 503.

the introductory uniform instructions [27] and nowhere did the trial court advise the potential jurors of the other penalties. Every juror eventually empaneled was asked generally, and some specifically, whether they could be fair and impartial, follow the court's instructions, hold the State to its burden of proof, arrive at a verdict based on their own assessment of the evidence and arrive at a punishment based on their own convictions. When empaneled, each member of the jury further swore an oath to "well and truly try the issues in this cause now on for hearing, and a true and just verdict render according to the law and the evidence."

As noted above, the State suggests that general fairness and "follow the law" questions of the like asked during voir dire were sufficient to detect those in the venire who automatically would vote for the death penalty. This argument was specifically rejected by the *Morgan* court. *Morgan*, 504 U.S. at 732–34, 112 S.Ct. at 2232, 119 L.Ed.2d at 506. The *Morgan* court was not convinced that such general inquiries could detect those jurors with views preventing or substantially impairing the exercise of their duties in accordance with their instructions and oath. *Morgan*, 504 at 734–36, 112 S.Ct. at 2233, 119 L.Ed.2d at 506.

■ The Court noted that general questions of fairness and impartiality leave the specific concern unprobed. *Id.* A defendant on trial for his life must be permitted on voir dire to ascertain whether his prospective jurors function under the belief that upon conviction the death penalty should automatically be imposed. *Morgan*, 504 at 734–36, 112 S.Ct. at 2233, 119 L.Ed.2d at 507. As in *Morgan*, the risk that such jurors may have been empaneled in this case and infected Jones' capital sentencing is unacceptable. *Id.* Jones was entitled, upon his request, to inquire of prospective jurors whether they would unwaveringly impose death after a finding of guilt. *Id.*

■ We are unpersuaded that this error infected the entire proceeding. We find such error only affects the juror's ability to render punishment, not their ability to weigh the

evidence and determine guilt. Accordingly, this case must be remanded to the District Court and a new sentencing hearing conducted. *See Illinois v. Smith*, 152 Ill.2d 229, 178 Ill.Dec. 335, 354, 604 N.E.2d 858, 877 (1992).

## III. VOIR DIRE

■ In his fifth proposition of error Jones argues he was denied a fair trial because the trial court's "death qualifying" voir dire was confusing. Jones also claims the trial court was biased during "death qualifying" the jury and instituted questioning to excuse those jurors who expressed reservations about the death penalty.

As noted above the trial court conducted the death qualifying portion of the voir dire. The trial judge called each juror individually into chambers and asked:

> In a case where the law and the evidence warrant, in a proper case, could you, without doing violence to your conscience, agree to a verdict imposing the death penalty?

If a prospective juror answered affirmatively, they were considered "death qualified" and asked to return to the courtroom. If a prospective juror answered negatively the trial court asked:

> If you found beyond a reasonable doubt that the defendant was guilty of murder in the first degree and if under the evidence, facts and circumstances of the case the law would permit you to consider a sentence of death, are your reservations such, that regardless of the law, the facts and circumstances of the case, you would not inflict the death penalty?

Jones argues this follow-up question is confusing. Recently, in *Mayes v. State*, 887 P.2d 1288, 1297 (Okl.Cr.1994), this Court held inquiries whether imposition of the death penalty would do violence to a juror's conscience are at best confusing and error. However, the error can be cured by follow-up questions which properly assess the potential juror's ability to set aside personal feelings and follow the law. *Id.* The Court held that

---

27. *See* OUJI–CR 100–105.

the follow-up question asked by the trial court in *Mayes,* in language virtually identical to that in the present case, cured the error.[28] Accordingly this follow-up question is not improper and any error in the initial question was cured. *See, Salazar v. State,* 852 P.2d 729, 732 (Okl.Cr.1993).

Jones next argues the trial court displayed bias in clarifying prospective jurors' answers to the follow-up question. In response to criticisms from defense counsel, the trial court asked confirmatory questions to clarify whether the prospective jurors could impose the death penalty. In cases where the answers of potential jurors are unclear or equivocal, this Court traditionally defers to the impressions of the trial court who can better assess whether a potential juror would be unable to fulfill his or her oath. *Allen v. State,* 871 P.2d 79, 91 (Okl.Cr. 1994); *Simpson v. State,* 827 P.2d 171, 175 (Okl.Cr.1992); *Duvall v. State,* 825 P.2d 621, 631 (Okl.Cr.1991), *cert. denied,* — U.S. —, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *Battenfield v. State,* 816 P.2d 555, 559 (Okl. Cr.1991), *reh'g denied,* 826 P.2d 612 (Okl.Cr. 1992), *cert. denied,* 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992). The trial court's method of clarification does not demonstrate bias. After considering the entire record surrounding the exclusion of the prospective jurors, and giving appropriate deference to the trial court's decision, we find the exclusion of the prospective jurors was not error. *Allen,* 871 P.2d at 91; *Battenfield,* 816 P.2d at 559. Accordingly, this proposition is denied.

28. The trial court asked:
 Are you—or let me simply ask it this way. If you found beyond a reasonable doubt that the Defendant was guilty of murder in the first degree, and if under the evidence, facts and circumstances of the case the law would permit you to consider a sentence of death, are your reservations about the death penalty such that, regardless of the law, the facts and the circumstances of the case, you would not consider inflicting the death penalty? *Id.* at 1297.

29. Hammon and Jones drove to Muskogee and robbed Bud's Convenience Store. During the robbery the clerk and a customer were shot. Both victims recovered and Hammon and Jones were convicted in the District Court of Muskogee

## ISSUES RELATING TO GUILT/INNOCENCE

### I. OTHER CRIMES EVIDENCE

In his sixth proposition of error Jones complains the admission of improper other crimes evidence rendered his trial unfair. *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979), *overruled in part on other grounds, Jones v. State,* 772 P.2d 922 (Okl.Cr.1989); 12 O.S. 1981, §§ 2403, 2404. The State maintains the other crimes evidence was properly admitted as part of the res gestae or under the common scheme or plan exception. *Salazar v. State,* 852 P.2d 729, 736 (Okl.Cr.1993), *reh'g denied,* 859 P.2d 517 (Okl.Cr.1993); *Dunagan v. State,* 755 P.2d 102, 104 (Okl.Cr. 1988).

Both Jones and Hammon filed motions in limine to prevent the State from introducing evidence concerning a robbery/shooting incident in Muskogee perpetrated by Hammon and Jones approximately six hours prior to the Slape robbery/homicide (hereinafter the Muskogee robbery/shooting).[29] These motions were overruled and the State was allowed to introduce Hammon's and Jones' statements regarding the Muskogee robbery/shooting and the testimony of the two victims of the Muskogee robbery/shooting. The State also introduced evidence that after the Muskogee robbery/shooting, Hammon and Jones stole a vehicle from a nearby apartment complex and returned to Okmulgee.

The State filed a *Burks* notice prior to trial detailing the other crimes evidence it intended to introduce and the trial court submitted a limiting instruction on this other crimes evidence prior to its introduction [30] and again

County of two counts of Robbery with a Dangerous Weapon, two counts of Shooting with Intent to Kill and one count of Larceny of a Vehicle. Those convictions were affirmed by this Court. *See Hammon v. State,* No. F–91–755, Not for Publication (Okl.Cr. July 26, 1994); *Jones v. State,* No. F–91–844, Not for Publication (Okl.Cr. July 26, 1994).

30. Jones also argues the limiting instruction given prior to the testimony of Richard Dix advised the jury that the testimony proved a common scheme or plan rather than was being offered to prove a common scheme or plan. While the instruction can be interpreted in this manner, the instruction specifically states that the testimony

in the jury charge. In its limiting instruction, the trial court advised the jury that the "other crimes" evidence was being introduced to prove a common scheme or plan.

In *Luna v. State,* 829 P.2d 69, 72 (Okl.Cr. 1992) (*quoting, Blades v. State,* 619 P.2d 875, 878–79 (Okl.Cr.1979), *cert. denied,* 449 U.S. 845, 101 S.Ct. 129, 66 L.Ed.2d 54 (1980)), we said:

> A common scheme or plan contemplates some relationship or connection between the crimes in question.... The word, "common" implies that although there may be various crimes, all said crimes must come under one plan or scheme whereby the facts of one crime tend to establish the other such as where the commission of one crime depends upon or facilitates the commission of the other crime, or where each crime is merely a part of a greater overall plan. In such event, the crimes become connected or related transactions, and proof of one becomes relevant in proving the other. However, evidence of other offenses should never be admitted under this exception when it shows that the accused committed crimes wholly independent of that charged. (Citations omitted).

■ The Muskogee robbery/shooting was not, as the State argues, part of a common scheme or plan. The Muskogee robbery/shooting was independent of and complete prior to the robbery/homicide tried in the case at bar. Simply because two robberies occur on the same day does not establish a common scheme.[31] The Muskogee robbery/shooting was not dependent on and did not facilitate the robbery/homicide. Proof of the Muskogee robbery/shooting in no way proved the robbery/homicide in Okmulgee and its admission was error. *Id.*

■ The introduction of the Muskogee robbery/shooting likewise cannot be sustained under any of the other recognized "other crimes" exceptions including res gestae as advocated by the State. The crimes were not a continuing transaction nor was evidence of the Muskogee robbery/shooting necessary to make the events logical. *See Rogers v. State,* 890 P.2d 959, 971 (Okl.Cr. 1995); *Burks v. State,* 594 P.2d at 772; *Childers v. State,* 764 P.2d 900, 904 (Okl.Cr. 1988); 12 O.S.1981, § 2404.

■ The question we must now answer is whether the admission of the Muskogee robbery/shooting warrants relief. The error was preserved through defense counsel's timely objection. Therefore, the burden is on the State to show that the admission error did not "result[ ] in a miscarriage of justice, or constitute[ ] a substantial violation of a constitutional or statutory right...." *Valdez v. State,* 900 P.2d 363, 380 (Okl.Cr.1995). *See also* 20 O.S.1981, § 3001.1. The State presented conclusive evidence Jones participated in an armed robbery in which a death occurred. Jones not only confessed, but was identified by Patrick White as driving the getaway car erratically in the vicinity of Truck 'N Things on the day of the homicide. David Stewart, William Munson, and Daniel Johnson saw two black males matching the description of Jones and Hammon in the store and in the vicinity of Truck 'N Things at the time of the crime. Jackie Alexander testified she saw Jones and Hammon with car speakers and car spinners shortly after the robbery. Truck 'N Things merchandise and money were seized in the apartment where Jones and Hammon were arrested. In light of the overwhelming evidence of guilt, we find the admission of the Muskogee robbery/shooting did not contribute to the verdict. *Valdez,* —— P.2d at ——, 66 OBJ at 1134; *Sattayarak v. State,* 887 P.2d 1326, 1332 (Okl.Cr.1994). Therefore, this proposition is denied.

## II. BIAS OF TRIAL JUDGE

In his seventh proposition of error Jones contends the trial judge was not fair and impartial. He cites numerous instances which he claims demonstrate Judge Moroney's bias. First, he cites the trial court's

---

is offered for the jury's consideration not that the jury must consider it. It should be further noted that the other instructions properly advised the jury that the evidence was offered to prove an alleged common scheme or plan.

**31.** We also reject the State's argument to create a crime spree exception under these facts.

limiting of discovery and quashing his subpoenas duces tecum. As discussed above, the trial court did not improperly restrict discovery, the State did not violate the discovery order and Jones was not entitled to the officers' work product. *See* Proposition I, *supra.*

 Jones argues the judge's conduct during voir dire demonstrated bias. As discussed in Proposition V, *supra,* the trial court properly voir dired the jury and any error in the initial death qualifying question was cured by follow-up questions. We find the trial judge's attempt to clarify juror's responses did not demonstrate bias.

 Jones argues the trial court impermissibly carried on ex parte discussions with the prosecutor. During the April 5, 1991 motion hearing, Jones' counsel argued to the court that the State was instructing witnesses not to speak with defense counsel. In response the prosecutor reminded the judge that he had spoken to her regarding his witnesses' concerns about the subpoenas defense counsel had issued. The trial court noted that the conversation concerned the interpretation of the court's order. The trial judge did not initiate this conversation nor did she attempt to inject her personal views into the hearing. Because Jones fails to show any prejudice, we find his claims meritless. *Pack v. State,* 725 P.2d 870, 871 (Okl. Cr.1986).

Jones further cites the extraordinary security, the trial court's refusal to allow counsel time to confer with him and the court's initial limiting instruction concerning other crimes evidence. These issues are addressed in other propositions of error and no prejudicial error was found. *See* Proposition VI n. 30, *supra* and Propositions XI and XV, *infra.* Accordingly, this proposition of error is denied.

## III. INSTRUCTIONS TO THE JURY

 In his tenth proposition of error Jones argues he was denied a fair trial because the trial court misinstructed the jury and failed to give his requested instruction on murder in the second degree.[32] Jones fails to cite any authority to support his proposition. Rule 3.5(A)(5), *Rules of the Court of Criminal Appeals,* 22 O.S.1991, ch. 18, App., requires appellants to support their arguments with citations to authorities and statutes. Failure to cite relevant authority waives all but review for plain error. *Kennedy v. State,* 640 P.2d 971, 980 (Okl.Cr.1982).

 Jones first argues the trial court erred in giving Instruction No. 8 concerning the elements of first degree felony murder and Instruction No. 9 which defines "in the commission of."[33] He argues Instruction No. 8 improperly included the elements of robbery with firearms, a crime with which he was not charged. Jones was charged with first degree felony murder. The predicate felony was robbery with firearms. Therefore, the elements of robbery with firearms are included as part of the elements of first degree felony murder. Under the doctrine of merger, the State is prohibited from prosecuting a person for felony murder and the predicate felony. *Johns v. State,* 742 P.2d 1142, 1149 (Okl.Cr.1987). We find Jones argument absurd and that the instructions given were proper.

Jones next argues the trial court erred in failing to submit his requested instruction on second degree "depraved mind" murder. We addressed a similar argument in *Freeman v. State,* 876 P.2d 283, 286 (Okl.Cr. 1994). In *Freeman,* this Court held to be entitled to instructions on Murder in the second degree, the trial court must find that sufficient evidence was presented to support the conclusion that the homicide was perpetrated without a design to effect death. *Id.* *See also* 21 O.S.1981, § 701.8(1).

 The evidence presented in the instant case was that Hammon and Jones entered Truck 'N Things with the intent to rob the store and carried out their plan. During the robbery, Jones shot and killed Gene Slape. This evidence does not support

---

**32.** Because this case must be remanded for resentencing, only first and second stage instructions will be addressed.

**33.** Instruction No. 8 mirrors OUJI–CR–430 and Instruction No. 9 mirrors OUJI–CR–431.

an instruction that Jones' acts were "without any premeditated design to effect death." 21 O.S.1981, § 701.8. A design to effect death is inferred from the fact of killing unless the circumstances raise a reasonable doubt whether such design existed. *Freeman,* 876 P.2d at 287; 21 O.S.1981, § 702. Furthermore, a design to effect death sufficient to constitute murder can be formed in an instant. *Freeman,* 876 P.2d at 287; 21 O.S.1981, § 703. As we stated in *Freeman,* "[i]n felony murder prosecutions the underlying felony suffices as proof of intent to take away human life so that [intent] was proven when the State established his intent to rob...." *Id. See also McAlpine v. State,* 634 P.2d 747, 749 (Okl.Cr.1981); *Wade v. State,* 581 P.2d 914, 916 (Okl.Cr.1978). Because Jones confessed he intended to rob Truck 'N Things, such evidence sufficiently proved Jones' intent. Accordingly, there was no evidence to support an instruction on second degree murder. Therefore, we find the trial court did not abuse its discretion in failing to so instruct the jury. *Freeman,* 876 P.2d at 287.

Jones argues the trial court erred in giving Instruction Nos. 10, 11 and 31 defining the terms "firearm", "carrying away", "knowingly", "pistol", "possessing" and "willful." [34] Jones claims these instructions were unnecessary because these terms are within the common knowledge of the average person. The trial court is required to give the uniform instructions applicable in a criminal case when they accurately state the law. 12 O.S.1981, § 577.2. Because these instructions accurately state the law, we find no error occurred.

Jones argues the trial court erred in giving a flight instruction. In *Kamees v. State,* 815 P.2d 1204, 1206 (Okl.Cr.1991) the appellant argued it was error to give a flight instruction because the act of running away completed the element of "carrying away" for grand larceny. This Court agreed, but found the error harmless. *Id.* at 1207.

As in *Kamees,* the flight instruction in this case was superfluous. To find Jones guilty of robbery the jury had to find he carried away merchandise. Under the facts of this case, the carrying away was completed when Jones ran from the store with the car speakers and car spinners. The consideration of this same evidence in the context of flight could not change in any way the jury's fundamental determination of guilt. *Kamees,* 815 P.2d at 1207. Accordingly, we find the erroneous flight instruction does not require reversal. *Id. See also Cole v. State,* 766 P.2d 358, 360 (Okl.Cr.1988); *Box v. State,* 541 P.2d 262, 266 (Okl.Cr.1975); *Richmond v. State,* 456 P.2d 897, 901 (Okl.Cr.1969).

Jones argues the trial court erred in giving Instruction No. 13 on "other crimes" evidence.[35] While evidence of the Muskogee robbery/shooting should not have been admitted in the first stage, the error was harmless beyond a reasonable doubt. *See* Proposition VI, *supra.* Accordingly, we find any error in giving the limiting instruction was harmless error.

Jones argues the trial court erred in giving Instruction Nos. 16 and 17 concerning confessions. He claims his confession was inadmissible. Because the confession was admissible, no error occurred. *See* Proposition XVI, *infra.*

Jones argues the trial court erred in giving Instruction No. 18 concerning the corpus delicti rule.[36] He claims the jury should have been instructed on second degree murder. As stated above, a second degree murder instruction was not warranted and we find no error in the court's instructions.

Jones contends the trial court erred in giving Instruction Nos. 20 and 21 on possession of a stolen vehicle. Jones argues charging this crime violates double jeopardy. Because the trial court is to instruct the jury on the applicable law and Jones was charged with possessing a stolen vehicle, we find the instruction was appropriate.[37]

---

**34.** The definitions in Instruction Nos. 10, 11 and 31 mirror the definitions in OUJI–CR–491 and OUJI–CR–630.

**35.** Instruction No. 13 mirrors OUJI–CR–807.

**36.** Instruction No. 18 mirrors OUJI–CR–815.

**37.** We agree with Jones that his conviction for Possession of a Stolen Vehicle violates the prohibition against multiple punishment in violation of

■ Jones argues the trial court erred in giving Instruction Nos. 27 and 29 without stating that these instructions applied to defendant Hammon only. Instruction Nos. 26 and 28 clearly state that only Hammon was charged with possessing a loaded firearm after former conviction of a felony and feloniously pointing a weapon. Instruction Nos. 27 and 29 then set forth the elements of those crimes. We find no error occurred.

■ Jones next argues the trial court erred in giving Instruction No. 34 concerning a defendant's right not to testify.[38] Jones claims because he did not request it and objected to its submission, reversible error occurred. In *Lakeside v. Oregon*, 435 U.S. 333, 340–41, 98 S.Ct. 1091, 1095, 55 L.Ed.2d 319, 326 (1978), the Supreme Court held that it was not a violation of the Fifth Amendment for the trial judge to give a cautionary instruction over the defendant's objection. We find this case dispositive and that no error occurred in the trial court's instructions.

Lastly, Jones argues the trial court erred in giving Instruction Nos. 9, 10 and 11 and submitting to the jury the charges of possession of a stolen vehicle, knowingly concealing stolen property and weapon use in the commission of a crime. He argues these charges were barred by double jeopardy. Because the trial court is to instruct the jury on the applicable law and Jones was charged with these crimes, we find the instruction was appropriate. Although we find Jones' convictions for these crimes are barred by 21 O.S. 1991, § 11, these counts are being reversed and dismissed. Therefore, any error in the instructions is cured. *See* Proposition XIII, *infra*.

## IV. RIGHT TO COUNSEL

In his eleventh proposition of error Jones contends he was denied his right to counsel because throughout most of the proceedings he was incarcerated out of Okmulgee County. He claims this resulted in little contact with his lawyer to consult about his case. Again,

Jones fails to cite any authority to support his proposition in violation of Rule 3.5(A)(5), *Rules of the Court of Criminal Appeals*, 22 O.S.1991, ch. 18, App. Failure to cite authority waives all but plain error. *Kennedy*, 640 P.2d at 980.

■ The State correctly characterizes Jones' claim as one of denial of access to counsel. Jones complains the trial court did not allow counsel a recess after exercising peremptory challenges and before the State's opening statement. Jones also complains of an instance in which he was not present for motion hearings because his attorney failed to request his presence by filing a proper writ. The record shows that the trial court refused counsel's request to recess after voir dire noting counsel had two hours with his client after the conclusion of the proceedings the previous day to discuss exercising peremptory challenges and other matters. The court then proceeded with the opening statement of the State and took a recess for lunch.

· Jones fails to cite how he was prejudiced by this so-called limited access to counsel. We find the above facts show the trial court's indulgence to accommodate Jones, not that Jones was denied access to counsel. Accordingly, this proposition is denied.

## V. ADMISSION OF TESTIMONY

Jones argues the trial court erred in allowing H. Michael Claver, an Assistant District Attorney, to testify because of his association with the District Attorney.[39] Jones concedes that Claver "was not technically prohibited from testifying", but argues he was somehow prejudiced by it. Again, Jones fails to cite any authority to support his proposition in violation of Rule 3.5(A)(5), *Rules of the Court of Criminal Appeals*, 22 O.S.1991, ch. 18, App.

■ Claver testified he took pictures of the crime scene and identified the photographs in court. He described the layout of Truck 'N Things and testified he found no

---

21 O.S.Supp.1987, § 11. *See* Proposition XIII, *infra*.

**38.** Instruction No. 34 mirrors OUJI–CR–845.

**39.** Claver was not involved in the prosecution of Jones or Hammon.

evidence of a shot being fired in the back area where Bradley Slape was tinting windows. He further identified a letter allegedly written by Jones that he received from two county treasurer employees. The employees had found the letter on a ledge outside the ladies restroom window.

In *Banks v. State*, 810 P.2d 1286, 1292–93 (Okl.Cr.1991), *cert. denied*, 502 U.S. 1036, 112 S.Ct. 883, 116 L.Ed.2d 787 (1992), this court held that the chief prosecutor's testimony regarding identification of a tape recording of a conversation with the accused was permissible testimony. The Court found the testimony was simply a formality required for introducing the tape into evidence. *Id.* As in *Banks*, Claver's testimony was offered to establish the chain of custody so the photographs and letter could be admitted into evidence. As admissibility of evidence is within the trial court's discretion, and failing to find any abuse of that discretion under these circumstances, this proposition is denied. *Id.* See also *Stohler v. State*, 751 P.2d 1087, 1090 (Okl.Cr.1988).

## VI. DOUBLE JEOPARDY

In his thirteenth proposition of error, Jones complains his convictions for using a firearm while in the commission of a felony, concealing stolen property and possession of a stolen vehicle violate both the Federal and Oklahoma Constitutional prohibitions against double jeopardy. *See* U.S. Const., amend. V and Okla. Const., art. II, § 21. He claims his convictions for using a firearm while in the commission of a felony and concealing stolen property are subsumed in his conviction for felony murder. He further claims he was punished for possession of a stolen vehicle in his previous Muskogee conviction for larceny of a vehicle.

■ We recently addressed the proper analysis of multiple punishment claims in *Hale v. State*, 888 P.2d 1027 (Okl.Cr.1995). First, this Court will review such claims employing a section 11 [40] analysis and only where section 11 does not apply will this Court engage in traditional double jeopardy analysis. *Hale*, 888 P.2d at 1029. If a single

criminal act gives rise to offenses which are not separate and distinct, are a means to another ultimate objective, are lesser included offenses, or are incidents or facets of some other offense, section 11 forbids punishing such conduct under more than one statute. *Id.*

In the present case, Jones was charged with four (4) crimes arising from one criminal episode. We must determine if these offenses are distinct and separate, if they are mere means to some other ultimate objective, if they are offenses included in some other offense, or are merely different incidents or facets of some primary offense. *Id.*

### A. WEAPON USE IN COMMISSION OF CRIME

■ Jones' conviction for using a firearm while in the commission of a felony must be reversed. The same act of using a firearm during the robbery was punished under two statutes. First, Jones was punished for using the firearm during the robbery in his felony murder conviction. (21 O.S.Supp. 1989, § 701.7(B)) The State had to prove Jones used a gun in the robbery to prove the underlying felony of robbery with a dangerous weapon. 21 O.S.1981, § 801. Second, Jones was punished for using the firearm during the robbery in his conviction for using a firearm while in the commission of a felony. Again, the State had to prove Jones used a gun to prove he used a firearm while in the commission of the felony of robbery with a dangerous weapon. *See* 21 O.S.Supp.1982, § 1287. Because section 11 forbids punishment of the same act under two separate statutes, we find Jones' conviction for using a firearm while in the commission of a felony must be reversed and remanded to the district court with instructions to dismiss.

### B. POSSESSION OF A STOLEN VEHICLE

■ Jones argues he was punished twice for stealing a vehicle in Muskogee. He claims the charge of possessing a stolen vehicle was included and punished in his convic-

---

**40.** 21 O.S.Supp.1987, § 11.

tion for larceny of that vehicle. We agree. Jones was convicted in the District Court of Muskogee County of larceny of the vehicle he was convicted of possessing hours after the Slape homicide. Both the theft and the possession occurred on the same day within hours. To complete the crime of larceny, Jones had to carry away the vehicle with the intent to permanently deprive its owner of the vehicle's use or value. Jones had to necessarily possess the vehicle to be convicted of stealing it. The act of possession was merely a different facet or incident of the primary offense of larceny. 21 O.S.Supp. 1987, § 11. Accordingly, we find Jones' conviction for possession of a stolen vehicle must be reversed and remanded to the district court with instructions to dismiss. *Shackelford v. State*, 481 P.2d 163, 165–66 (Okl.Cr. 1971).

### C. CONCEALING STOLEN PROPERTY

■ Lastly, Jones argues he was punished twice for stealing car speakers and car spinners from Truck 'N Things. He claims the act of knowingly concealing stolen property is included in the act of robbery. Again, we must agree. To complete the crime of robbery Jones had to carry away the car speakers and car spinners. The concealment of the property immediately after the robbery was incident to the primary offense. 21 O.S.Supp.1987, § 11. Accordingly, we find Jones' conviction for concealing stolen property must be reversed and remanded to the district court with instructions to dismiss.

## VII. PROSECUTORIAL MISCONDUCT

Jones argues prosecutorial misconduct deprived him a fair trial. He argues the prosecutors failed to comply with the trial court's discovery orders, encouraged the jury to believe that it had a moral duty to find for the State and demeaned him.[41]

■ Jones argues the prosecutor improperly withheld evidence from the defense in

violation of *Allen v. District Court of Washington County*, 803 P.2d 1164 (Okl.Cr.1990), *modified by, Richie v. Beasley*, 837 P.2d 479 (Okl.Cr.1992), and counseled State's witnesses to avoid his lawyer. As discussed earlier, the trial court never made a finding that the State failed to comply with its discovery order. The State explained that it produced all evidence within its control as prescribed by the order. We cannot find that the prosecutor was guilty of misconduct by failing to provide Jones with White's and Beard's statements containing their conversation with law enforcement officers where the statements had been lost and attempts to locate them were futile. Without a finding that the State intentionally violated the trial court's order, we refuse to find that the prosecutor is guilty of misconduct.

Jones argues the prosecutor improperly demeaned and ridiculed him, and improperly placed a duty upon the jury to teach Jones and Hammon a lesson. The prosecutor told an anecdote using pigs as characters with the moral of the story being you are what you are no matter how you try to disguise it. The prosecutor then argued Jones was a thief, a robber, a possessor of stolen property and a murderer.

■ The above argument was not met with a contemporaneous objection.[42] Failure to object results in waiver of the issue on appeal and the Court will review the argument only for plain error. *Freeman v. State*, 876 P.2d 283, 287 (Okl.Cr.1994); *Shelton v. State*, 793 P.2d 866, 872 (Okl.Cr.1990). This Court will not reverse a conviction for prosecutorial misconduct unless the State's argument is so flagrant and of such a nature as to be prejudicial to the defendant. *Freeman*, 876 P.2d at 287; *Romano v. State*, 847 P.2d 368, 380 (Okl.Cr.1993), *aff'd*, ── U.S. ──, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994).

■ We are continually astounded that experienced prosecutors jeopardize cases, in which the evidence is overwhelming, with borderline argument. However, we have re-

---

41. Because this case must be remanded for resentencing, only first stage comments will be addressed.

42. At the conclusion of the State's argument, defense counsel moved for a mistrial based on "highly prejudicial statements of the prosecutor."

viewed the prosecutor's conduct and comments in their entirety and in comparison to the great weight of evidence presented, we find his conduct and comments did not contribute to the verdict. *Pickens v. State,* 850 P.2d 328, 343–44 (Okl.Cr.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994).

■ Jones also argues the prosecutor improperly argued the jury had a moral duty to convict him. The argument was not met with a contemporaneous objection. Again, failure to object results in waiver of the issue on appeal and the Court will review the argument only for plain error. *Freeman,* 876 P.2d at 287; *Shelton,* 793 P.2d at 872. As stated above this Court will not reverse a conviction for prosecutorial misconduct unless the State's argument is so flagrant and of such a nature as to be prejudicial to the defendant. *Freeman,* 876 P.2d at 287; *Romano,* 847 P.2d at 380.

We have reviewed the prosecutor's conduct and comments in their entirety and in comparison to the great weight of evidence presented, we find the prosecutor's comments, neither individually nor taken together, contributed to the verdict. *Pickens,* 850 P.2d at 343–44. Accordingly, this proposition is denied.

### VIII. SECURITY AT TRIAL

In his fifteenth proposition of error Jones argues the trial court erred in ordering extraordinary security during trial of this case.[43] Jones concedes maintaining order and security in the courtroom is a proper exercise of judicial discretion. *Lee v. State,* 738 P.2d 173, 175 (Okl.Cr.1987).

■ The record is unclear concerning the reason for these extra security measures. A complete record concerning the need for extra security was not made. However, several references were made concerning the reason for the security. When Hammon's attorney objected to the presence of seven guards in the courtroom, the prosecutor noted that at preliminary hearing the defendants were wearing the "colors" and acknowledging, or attempting to acknowledge allegiance or membership in a violent gang. Hammon's counsel disagreed with that characterization. Jones' attorney did not object. Letters were offered, but not introduced until third stage, that could be construed as requests from Hammon and Jones asking Sheila Clark to bring them a gun so they could escape.

■ Because the presence of peace officers in the courtroom and overall security are within the discretion of the trial court and there is nothing in the record to show the trial court abused its discretion, we find Jones' claim meritless. *VanWoundenberg v. State,* 720 P.2d 328, 334 (Okl.Cr.1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986).

### IX. CONFRONTATION CLAUSE VIOLATION

In his sixteenth proposition of error, Jones argues he suffered extreme prejudice by the introduction of his nontestifying co-defendant's redacted confession in their joint trial. *Bruton v. U.S.,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Jones maintains that redaction was ineffective and failed to prevent error. He argues the introduction of Hammon's statements violated his right to confront witnesses against him and that the statements constitute inadmissible hearsay because they were not recorded or signed. He further argues because the trial court limited discovery, he was unable to determine the credibility of the statements without Agent Page's notes which he claims were not delivered during discovery.[44]

■ In *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), the Supreme Court restated that a nontestifying codefendant's confession, inculpating another codefendant, cannot be admitted at their joint trial because the constitutional right to confrontation is violated. This is

---

43. The security ordered consisted of metal detectors, restricting entrance and exit to one door of the courthouse and posting extra guards both inside and outside the courtroom.

44. The record shows Jones was provided with Agent Page's notes taken during his interviews with both Jones and Hammon. (Mot.Tr. 4/21/91 at 21).

true even when the jury is instructed only to consider each defendant's statements against the party who made it. *Cruz*, 481 U.S. at 193, 107 S.Ct. at 1719, 95 L.Ed.2d at 172. Severance is appropriate if the State intends to introduce during a joint trial a defendant's confession which inculpates his codefendant. *See Bruton v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). "The purpose of a severance in such cases is to prevent the introduction of directly incriminating evidence without confrontation of the adverse party, in violation of the non-confessing co-defendant's Sixth Amendment rights." *Neill*, 827 P.2d at 893 (*quoting, Menefee*, 640 P.2d 1381, 1383 (Okl.Cr.1982)). A *Bruton* violation occurs whether the error is instigated by the prosecution or by a co-defendant. *Neill*, 827 P.2d at 893.

In the present case the prosecution introduced both Hammon's and Jones' statements through Agent Page detailing their involvement in the Slape homicide. Neither Hammon nor Jones took the witness stand nor presented any witnesses or evidence in his behalf during the first stage of trial. Both relied solely on cross-examination of prosecution witnesses to show they were less culpable for their participation. Utilizing this trial strategy, Hammon's attorney was able to introduce the entirety of his statement which inculpated Jones.

■ While the inculpatory statements should not have been admitted, we find the error was harmless beyond a reasonable doubt. This Court has continually held that when such a confrontation violation exists, the defendant must still demonstrate that the error was prejudicial. *See Keeling v. State*, 810 P.2d 1298, 1302 (Okl.Cr.1991); *Smith v. State*, 765 P.2d 795, 796 (Okl.Cr.1988) and *Parsons v. State*, 740 P.2d 167, 169 (Okl.Cr. 1987). When the properly admitted evidence is so overwhelming and the prejudicial effect of the statements is insignificant, the admission of the confession is harmless. *Smith*, 765 P.2d at 796.

■ In the present case, the properly admitted evidence against Jones was overwhelming rendering the prejudicial effect of

Hammon's statements insignificant. Patrick White identified Jones as the driver of the getaway car. White said Jones was driving erratically in the vicinity of Truck 'N Things on the day of the homicide. David Stewart, William Munson, and Daniel Johnson saw two black males matching the description of Jones and Hammon in the store and in the vicinity of Truck 'N Things at the time of the crime. Jackie Alexander testified she saw Jones and Hammon with car speakers and car spinners shortly after the robbery. Truck 'N Things merchandise and money were seized in the apartment where Jones and Hammon were arrested. Lastly, Jones confessed. While the admission of the inculpatory portions of Hammon's statement was error, we find the error was harmless since the properly admitted evidence of guilt against Jones was so overwhelming that it is clear beyond a reasonable doubt that the improper use of Hammon's statement did not contribute to the verdict. *Schneble v. Florida*, 405 U.S. 427, 431, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340, 345 (1972). Accordingly, this proposition is denied.[45]

## X. ADOPTION OF BRIEF OF RICHARD HAMMON

In his final proposition of error Jones adopts all arguments and authorities set forth in co-defendant Hammon's brief. We have found Hammon's case requires remand for resentencing for failure to life qualify the jury. All other errors found were harmless beyond a reasonable doubt.

Having reviewed the allegations of error raised by Jones, we find that his conviction for Murder in the First Degree shall be **AFFIRMED**. Jones' Judgments and Sentences for Possession of a Stolen Vehicle, Knowingly Concealing Stolen Property and Using a Weapon in the Commission of a Crime are **REVERSED** and **REMANDED** with instructions to **DISMISS**. Jones' sentence of death is **REVERSED** and this case is **REMANDED** to the District Court to conduct a new sentencing hearing.

**45.** To avoid any *Bruton* error on remand, sepa- rate sentencing hearings should be conducted.

JOHNSON, P.J., and LUMPKIN, J., concur in part/dissent in part.

CHAPEL, V.P.J., and LANE, J., concur.

JOHNSON, Presiding Judge: concurring in part/dissenting in part.

I concur with the Court herein as it relates to the finding of guilt, but I dissent as to the reversal and remanding this case for resentencing. The Court has based its resentencing on what we have come to know as "reverse *Witherspoon* excludables".

Courts have long had a problem with the automatic exclusion of jurors in a death penalty case. The Supreme Court originally said that one who "automatically" would vote against the imposition of a death penalty would be excluded from a jury panel for cause. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The Supreme Court wanted to clarify the *Witherspoon* decision, and did so some years later in the case of *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). The Court held that a juror is to be removed from the jury panel for cause when he or she would automatically vote for the death penalty and fail to consider the aggravating or mitigating circumstances.

I agree with the State in this regard that counsel did get to ask the jurors whether they would follow the instructions as to guilt or innocence, as well as punishment. Any irregularity was cured by this question. I would, therefore, affirm not only the judgment, but the sentence herein.

LUMPKIN, Judge: concurring in part/dissenting in part.

I concur in the Court's decision affirming the conviction for Murder in the First Degree and remanding for resentencing, and reversing to dismiss the conviction for Using a Weapon in the Commission of a Crime. However, I find the application of 21 O.S.Supp.1987, § 11 to the convictions of possession of a Stolen Vehicle and Concealing Stolen Property inconsistent with the analysis of the other crimes evidence pursuant to 12 O.S.1981, §§ 2403, 2404, and the facts in this case. If the acts are separate and independent for one purpose, they are separate and independent for both. Under the analysis in the opinion, a person who steals property could never be convicted of concealing that same property, regardless of how far it was transported or what actions were taken to conceal it. I believe this analysis goes far afield of the intent of Section 11. I would affirm both the Possession of Stolen Vehicle and Concealing Stolen Property convictions due to the evidence establishing these offenses were separate offenses based on the acts of the defendant.